## RIO BRAVO OIL CO. v. STALEY OIL CO. et al.

### No. 14035.

Court of Civil Appeals of Texas.
Fort Worth.

March 1, 1940.

Rehearing Denied April 5, 1940.

Bullington, Humphrey & Humphrey and Frank Ikard, all of Wichita Falls, for appellant.

McDonald & Anderson, T. R. Boone, and Charles C. McDugald, all of Wichita Falls, for appellees.

DUNKLIN, Chief Justice.

This suit was instituted by the Staley Oil Company on June 20th, 1938, against the defendant, Rio Bravo Oil Company, to recover 7/8ths of the mineral estate in 120 acres, out of the S. W. ¼th of Survey No. 33, Block No. 7, H. & T. C. Ry. Co. Survey, in Wichita County. There were two counts in plaintiff's petition: the first in the statutory form of trespass to try title; the second was a claim of title by statutes of limitation of 3, 5, 10 and 25 years, Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, 5519. With a further plea of laches and stale demand and estoppel, by reason of plaintiff's adverse possession of 55 years and abandonment by defendant of any claim of title. Plaintiff further pleaded that it was a bona fide purchaser for a valuable consideration, without notice of the unrecorded muniments of title under which defendant was claiming title.

M. L. Banta filed a plea of intervention, in which he sought a recovery of defendant, for all the mineral estate in the entire 160-acre tract not sued for by plaintiff, and also for title to the surface estate. His plea was substantially the same as in plaintiff's petition.

The defendant answered the suits of both plaintiff and intervener, by general demurrer, general denial, plea of not guilty and a special plea of claim of title in the minerals in and under the said southwest quarter of section 33, block 7, H. & T. C. Ry. Co. Survey, including 160 acres, with incidental right of ingress and egress over the surface of the land, and all other privileges and reservations, including the minerals, retained by the Houston & Texas Central Railway Company in its contracts with James H. Banta, of date August 1st, 1882, conveying to him said quarter section, but disclaiming title to the surface estate thereof.

All parties prayed for removal of claims of their adversaries, as clouds upon their respective titles.

The case was tried to a jury, and following is the documentary evidence on which plaintiff and intervener relied for recovery, additional to evidence hereinafter noted to support title by limitation.

Plaintiff's Exhibit No. 7: deed of trust by the Houston & Texas Central Railway Company, dated July 1st, 1866, by the terms of which it conveyed to Shepherd Knapp and David S. Dodge, trustees, and their successors in trust, ten sections of 1,024 acres per mile of railway it would construct, and which included the land to be acquired by the Railway Company, now in controversy, under an Act of the Legislature passed March 11th, 1848, and later Acts supplemental thereto, including an Act approved January 30th, 1854, entitled

"An Act to Encourage the Construction of Railroads in Texas, by donation of lands." It was recited in that instrument that it was given to secure payment of certain bonds the Railway Company would issue to procure money with which to pay for construction of its railway and for equipment with which to operate it. It was stipulated that after the Railway Company had surveyed and located the land covered by the lien, it would furnish to the trustees schedules and descriptions thereof, and affixed thereto minimum prices for which they are to be sold, with affidavits of the president and secretary of the Railway Company that such minimum prices are fair, the aggregate amount of which to be sufficient to liquidate the aggregate of the bonds to be issued; and the trustees would also reappraise said lands and affix minimum prices thereof in the same manner as the Railway Company has done, and with the same force and effect. With these further provisions:

"And whenever said Railway Company shall certify in writing to said Trustee that it has contracted for the sale of any section or parcel of said lands at a sum not less than the minimum price affixed to the same and ten per cent at least of the consideration shall be paid to the Trustees and a bond and mortgage of the consideration shall be paid upon the premises contracted to be sold in proper form from the purchaser to the Trustee securing the residue of the consideration money with the interest thereon as hereinafter mentioned shall be delivered to the Trustees such mortgage having been first duly acknowledged and recorded, the said Trustees will thereupon make, execute and acknowledge a deed conveying to such purchaser, his heirs and assigns, all the rights, title, interest, estate and property of the said Trustee of, in and to the section or parcel of land so sold with a covenant that they have not done any act, matter or thing to defeat or prejudice their title to the lands so conveyed. Provided that in all cases the true consideration or price of the land shall be set forth in the conveyance and shall in no case except as hereinafter provided be less than the minimum price affixed to the same as aforesaid * * *."

It was further stipulated that in event of default in payment of bonds, the trustees would be empowered to sell the lands then on hand, to satisfy such obligations, and convey same to the purchasers by deeds with general warranty of title.

Plaintiff's Exhibit No. 1: patent from the State of Texas, of date July 5th, 1867, to the Houston & Texas Central Railway Company, to the S. W. quarter of section 33, block 7, H. & T. C. Ry. Co. Survey, in Wichita County; filed for record in Deed Records of Wichita County, March 14th, 1910.

Plaintiff's Exhibits Nos. 2 and 3: two oil and gas leases in the usual and customary form, dated September 25th, 1937, and filed for record in the Deed Records of Wichita County, November 3rd, 1937, from M. L. Banta and wife, Jimmie Banta, Mrs. R. C. Pinkerton, a widow, and E. L. Chilton and wife, Estelle Chilton, D. R. Preston and wife, Brown Eyes Preston, Mrs. Irene Preston, individually and as community administratrix of the estate of herself and T. E. Preston, deceased; Rado Bradley, wife of R. J. Bradley, Mary Lee Walker, wife of M. T. Walker, Zora Cunningham, wife of G. E. Cunningham, M. L. Pinkerton, E. L. Chilton, by R. J. Bradley, attorney in fact, to plaintiff, Staley Oil Company, covering the southwest one-fourth of section 33, block 7, H. & T. C. Ry. Co. Survey, Wichita County. Those leases were for a period of ten years, upon conditions stated. The recited consideration in each was ten dollars cash in hand paid and covenants and agreements of the lessee to pay to lessors one-eighth of oil and gas produced, with privilege of lessee to avoid a termination of the leases by paying a rental of $1 per acre, at the end of any preceding year.

Uncontradicted testimony of M. L. Banta, introduced as a witness by plaintiff, to the following facts, to-wit: in the year 1885, James H. Banta built a residence house upon the 160-acre tract in controversy, and enclosed the same with a fence. During the same year, he moved upon it with his family, put 40 acres in cultivation and used the remainder for pasturage of his stock. He continued that occupancy and use, and paid taxes on the land, from 1885 to the year of 1916, when he died. Throughout that period his possession of the surface estate has been peaceable and adverse. When he died, he left surviving him six children, and witness was one of them. Witness then went into possession and ever since and up to September 25th, 1937, the date of plaintiff's oil and gas leases, he has been in peaceable and adverse possession of the surface estate, occupying the residence thereon, cultivating the 40 acres and using the remainder for

pasturage purposes, just as his father had done, and has paid taxes thereon. During his possession of the land, James H. Banta executed oil and gas leases on portions of the 160-acre tract to different persons; one dated April 6th, 1909, to D. C. Green; one to Fred S. Rowe, of date August 10th, 1911; one to Frank Cullinan, dated January 17th, 1913; also a deed to A. N. Treece, of date January 28th, 1913, but the land was reconveyed to J. H. Banta by Treece, on the same date. After the death of J. H. Banta, his heirs executed deeds one to another of their respective interests in the land, which they had inherited from him, those deeds being of divers dates between the year 1916 and 1920. On July 22nd, 1922, some of them executed an oil and gas lease to The Texas Company on a portion of the tract, and on September 7th, 1927, several executed a deed of partition of the tract between themselves. All of the instruments noted above, including those executed by J. H. Banta and by his heirs, were filed and recorded in the Deed Records of Wichita County, soon after their execution. But no possession of the minerals was acquired under any of those instruments, by drilling oil wells. Nor has any drilling been done for oil or gas by any one else.

In the year 1924, witness sold gravel from this land to the Austin Bridge Company, who mined it by use of shovels, for a period of six months, and paid witness $900 for the gravel removed.

Witness never heard of any adverse claim of the minerals in the land as against J. H. Banta during his lifetime, or in any manner since his death, until April 12th, 1938, when defendant recorded in the Deed Records of Wichita County the instruments under which they claim title in this suit.

No evidence was offered to show that plaintiff or any of the heirs of James H. Banta, or any one claiming under them, ever paid any valuable consideration for the instruments under which they claimed title. Plaintiff and intervener then rested their case.

Defendant then introduced the following instruments.

Contract of the Houston & Texas Central Railway Company, designated as party of the first part, and James .H. Banta, designated as party of the second part, under which Banta paid to the Railway Company $133.34 cash and executed his two promissory notes in favor of the Railway Company, each for the sum of $133.33 principal, with interest from date, one due one year and the other two years after date, as the purchase price of the southwest ¼th of section 33, block 7, H. & T. C. Ry. Co. Survey, in Wichita County, Texas, containing 160 acres. And in consideration for the cash received and the execution and delivery of those notes and payment thereof, according to their tenor and effect, the Railway Company agreed to "make or cause to be made and executed unto said party of the second part, his heirs or assigns (upon request at the general office of the party of the first part and the surrender of this contract) a deed conveying said premises with special warranty, but made subject to the following rights of the said Railway Company, each and all of which rights are hereby reserved and are not to pass by the deed to be made by said Railway Company." Then follow reservations of the company's right of way 200 feet wide; the right of the company to prospect and explore the land for coal, minerals, stone or other deposits, and to mine the same, under certain conditions stated, for its own benefit; with privilege to Banta or his assigns, under stated conditions, ·to open and operate any mine or mines, borings or quarries on the land for coal, stone, minerals or other valuable deposits, but that the Railway Company would be entitled to five per cent of what is taken therefrom as the result of such operations, to be delivered to it by such operator. The contract concludes as follows:

"The said James H. Banta, by accepting this deed, agrees to the reservations aforesaid, and to the entire contract as hereinabove specified, and covenants to and with the said Railway Company, and its assigns, that it and they shall have and enjoy all the reservations, rights and privileges contained and contracted for in this deed; and further agrees, that this covenant shall run with the land hereby sold. And it is stipulated in this agreement that no assignment of the premises shall be valid unless the same shall be endorsed hereon.

"In witness of which, the Houston & Texas Central Railway Company has caused this instrument in duplicate to be signed by its Vice President and Secretary, under its corporate .seal, and the

said party of the second part has hereunto set his signature on the day and year above written.

"(Signed)    , Vice President.
"Attest: (Signed)    A. S. Richardson, Secretary.
"(Signed) James H. Banta."

That contract was in two separate parts, each in the same words and figures and each signed by the parties thereto. One of those parts was duly acknowledged by Banta, on September 9th, 1882; and the other by the Vice President of the Railway Company, on September 14th, 1882. It was never filed for record in the Deed Records of Wichita County until April 12th, 1938, which was some five months after plaintiff's oil and gas lease had been recorded in those records. When defendant offered the contract in evidence, counsel for plaintiff objected thereto because its execution had not been proved. The court overruled the objection and plaintiff excepted. Counsel for defendant then said: "I offer it on the ground of ancient instruments. The date of it is 1882." The court then said: "I will let it in for the time being." Later, when counsel for plaintiff objected to the introduction by defendant of its exhibits 4 and 5, hereinafter referred to, on grounds which also included his former objection to the introduction of said contract, counsel for defendant stated he expected to prove that the two instruments embodying said contract of sale have been in the custody of the Houston & Texas Central Railway Company and its assigns, since the year 1882. But such proof was never offered.

Defendant introduced in evidence a deed of date August 3rd, 1885, and filed for record in the Deed Records of Wichita County, December 19th, 1885, reading as follows:

"This indenture made this 3rd day of August, 1885, between Nelson S. Easton and James Rintoul, as Trustees, under the Deed of Trust hereinafter described, parties of the first part, and Jas. H. Banta, party of the second part,

"Witnesseth: Whereas, the said parties of the first part are duly constituted Trustees, under the certain Deed of Trust dated July 1st, 1866, duly executed and delivered by the Houston & Texas Central Ry. Co. and recorded among other places in Vol. 2 pages 72, etc. of the Records of Mtgs. of Harris County, Texas, and,

"Whereas, the lands hereinafter conveyed were conveyed to the Trustees under said Deed of Trust upon the Trusts and with the powers therein set forth and hereby referred to, and,

"Whereas, the said The Houston & Texas Central Ry. Co. has heretofore made, executed and delivered to the said party of the second part, an instrument in writing dated August the first, 1882, and numbered 38X contracting to convey or purporting to convey the lands hereinafter described at $2.50 per acre, amounting to the sum of Four Hundred Dollars, to be fully and punctually paid as in said instrument provided, and,

"Whereas, the said consideration was not paid over to the said parties of the first part, but has been collected by the said Railway Company or its receivers, and the said Ry. Co. and its receivers have now rendered account thereof to the parties of the first part, and,

"Whereas, in and by the certain order of the Circuit Court of the United States for the Eastern District of Texas, dated May 7th, 1885, entered in the following described action, viz:

"Nelson S. Easton and James Rintoul, Trustees, Vs. The Houston & Texas Central Ry. Co. in Equity No. 183: Same Vs. same in Equity No. 184, The Farmers Loan & Trust Co., Trustee, Vs. Same, in Equity, No. 188, and The Southern Development Co. Vs. The Houston & Texas Central Ry. Co. et al. in Equity No. 185, and duly entered in the office of the Clerk of said Court, at the City of Galveston, in said State of Texas, and to which order reference is especially hereby made, it is provided that if the said parties of the first part shall elect to ratify the said sale and the investment of the proceeds thereof that the bonds, notes, moneys, etc. therein mentioned should be paid over to the said parties of the first part as therein provided, and that the Trustees should deliver to the Receivers a deed to the purchasers for the lands sold and conveyed by the said Deed of Trust, which deed if the lands have been paid for in full shall be immediately delivered by the receiver to the purchaser of such lands and which deed, if the lands have been paid for partly in cash and partly in notes, shall be held by the receivers in escrow for delivery to the said purchasers when such purchaser shall have duly paid for the said lands in full, and,

"Whereas, the said receivers and said Ry. Co., simultaneously herewith make payment and transfer as provided in said order.

"Now, this indenture Witnesseth: That the said parties of the first part, electing to consummate said transaction and make such sale, and by virtue of the powers and authority in them vested by the said Deed of Trust and in execution of said orders of the said court and in consideration of the premises and the fulfillment thereof, and of One dollar to us in hand paid by the said party of the second part, the receipt of which is hereby acknowledged, do Grant, Bargain, Sell and Convey unto the said party of the second part, his heirs and assigns, all the right, title. and interest, estate and property of them, the said parties of the first part, as such trustees, of, in and to the certain tracts or bodies of land situated in the County of Wichita, in the State of Texas, known and described as follows, Viz:

"160 acres S.W. ¼ in Section No. 33, in Block No. 7, and Certificate No. 747, granted by the said State of Texas, to the said Ry. Co. together with all and singular, the tenements, the hereditaments and appurtenances thereto belonging or in anywise appertaining, excepting and reserving herefrom all the exceptions and reservations contained in the said instrument so made by the Ry. Co., the said party of the second part agreeing by acceptance hereof to perform all the covenants upon him imposed thereby as fully as if all of the same were textually inserted herein. To Have and To Hold all and singular. the premises above mentioned unto the said party of the second part, his heirs and assigns, forever, subject to any and all encumbrances, if any there be on the said lands and to the exceptions, reservations and agreements (if any) in said instruments contained.·

"In witness whereof, the said parties of the first part have hereunto set their hands and seals the day and year first above written.

"Signed, sealed and delivered in the presence of: J. W. Pungay, W. R. Busbour.

"N. S. Easton, J. Rintoul, as Trustees, as aforesaid."

When counsel for defendant offered that deed, he inquired of counsel for plaintiff: "You are claiming title under that?" Mr. Boone, for plaintiff, said: "I am claiming title under that and I am claiming title by limitation both.".

Defendant introduced in evidence' its Exhibit No. 4, but as the court discovered upon inspection it did not embrace the land in controversy here, it will not be further noticed.

Defendant's Exhibit No. 5, introduced in evidence, was a conveyance by certain named trustees to the Rio Bravo Oil Company of all the mineral estate in the 160 acres in controversy that had been reserved by the Houston & Texas Central Railway Company in its contract of sale to James H. Banta, of date August 1st, 1882. That conveyance was duly authorized by orders of the federal court, in a proceeding there pending. That deed was dated October 9th, 1918, but was never filed for record in the Deed Records of Wichita County, until April 12th, 1938, which was some five months after plaintiff's oil and gas lease had been filed in those records, on November 3rd, 1937.

At the conclusion of the evidence, plaintiff and intervener moved for an instructed verdict in their favor, which motions were overruled, and movants excepted.

The jury made findings on 23 special issues. After they were returned into court, plaintiff moved for a judgment in its favor on those findings; and defendant moved for a judgment in its favor non obstante veredicto. The rulings of the court on those motions are reflected in the judgment rendered. Issues Nos. 1 to 8, and 20 to 23, inclusive, embodied plaintiff's claim of title by limitation, and the findings of the jury thereon all sustained that claim. Plaintiff specially alleged that it took the oil and gas lease now claimed by it upon the approval of the title by its attorney, and the attorney so employed testified that he examined the title and reached the conclusion that the words, "said instrument" and "such instrument", used in the trustee's deed to James H. Banta, of date August 3rd, 1885, referred to the deed of trust which had been recorded, rather than to the railway company's. contract to sell the same. According to plaintiff's further allegation, a reasonably prudent person, under like employment, would have reached the same conclusion as did plaintiff's attorney. Findings in answer to special issues Nos. 9 and 10 sustained those allegations.

Findings on issues 11 and 12 were that the defendant and its predecessors in title

failed to give notice to the world of their claim of ownership in the mineral estate in the land.

The findings on the four issues last discussed avail nothing to plaintiff and intervener in the absence of proof that they were innocent purchasers of their interest and paid value therefor, as hereinafter noted.

Issues 13 to 17, inclusive, were to the effect that prior to April 1st, 1928, under claim of ownership, plaintiff and its predecessors in title caused to be mined gravel, rock and stone from the land, and sold the same for the sum of $900; and, as shown by the undisputed evidence, above noted, those operations lasted only six months.

Findings on issues Nos. 18 and 19 sustained plaintiff's allegations that defendant and its predecessors in title abandoned all claims to the mineral estate in the land prior to April 1st, 1928, and prior to April 1st, 1913. The court in its judgment rejected those findings as unsupported by sufficient evidence. But the same were predicated upon the assumption that there had been a severance of the mineral estate from the surface estate, a point hereinafter discussed, in the absence of which the question of abandonment could not arise.

The issues presenting plaintiff's claim of title by limitation were specifically applied to the claim of adverse possession to the mineral estate, after severance thereof from the surface estate, and it is apparent from the court's judgment that his rejection of the findings on those issues, and holding that neither plaintiff nor intervener had ever held adverse possession of the mineral estate in the land for a length of time sufficient to support their claims of title by limitation, were all predicated upon the assumption that there had been a severance of the mineral estate from the surface estate.

We quote the following from the judgment rendered:

"The court further finds that the intervener, M. L. Banta, inherited an undivided 1/6 interest in and to the premises hereinafter described from his father, James H. Banta, and has acquired by purchase from the heirs of James H. Banta 41/72 interest additional, making in all an undivided 53/72 interest claimed by the said intervener M. L. Banta.

"The court finds that the said M. L. Banta is not a bona fide purchaser for value of the undivided 1/6 interest in and to the land and premises hereinafter described which he inherited from his father, but that the said M. L. Banta, intervener, is a bona fide purchaser for value of the remaining 41/72 interest claimed by him in and to the land and the premises hereinafter described, including the mineral rights thereunder.

"The court further finds that the said Staley Oil Company, plaintiff herein, is a bona fide purchaser for value of the oil and gas lease covering the premises hereinafter described, which said oil and gas lease was purchased by the said Staley Oil Company from M. L. Banta and other heirs and vendees of the heirs of the said James H. Banta, deceased.

"It is, therefore, ordered, adjudged and decreed by the court that the intervener, M. L. Banta, do have and recover of and from the defendant, Rio Bravo Oil Company, an undivided 41/72 interest in and to the mineral rights in and under the premises hereinafter described, and that the title and possession of the same be divested out of the defendant, Rio Bravo Oil Company, and vested in the intervener, M. L. Banta.

"It is further ordered, adjudged and decreed by the court that the defendant, Rio Bravo Oil Company, do have and recover of and from the intervener, M. L. Banta, an undivided 1/6 interest in and to the minerals in and under the premises hereinafter described, subject to the oil and gas leases of Staley Oil Company and J. L. Art, together with such rights in and to the surface of said premises as were reserved by the Houston & Texas Central Railway Company in its contract with James H. Banta, dated August 1st, 1882, recorded in the Deed Records of Wichita County, Texas, to which reference is hereby made for a more particular understanding thereof, and that said undivided interest be vested in the defendant, Rio Bravo Oil Company, and divested out of said M. L. Banta, intervener.

"It is further ordered, adjudged and decreed by the court that the plaintiff, Staley Oil Company, and the intervener, J. L. Art, do have and recover of and from the defendant, Rio Bravo Oil Company, the title and possession of the oil and gas leasehold estates acquired by them from M. L. Banta and others on September 25, 1937, by instruments recorded in Volume 356, pages 542 et. seq. and Volume 356, pages

547 et seq. of the Deed Records of Wichita County, Texas, to which reference.is hereby made for a more particular description thereof, in which instruments the said M. L. Banta et al conveyed the title to ⅞ of all the minerals thereunder, reserving unto themselves as lessors ⅛ of the minerals thereunder as royalty to be delivered by the lessee, Staley Oil Company, and its assignee and intervener, J. L. Art, to the credit of the lessors, free of cost to the pipe line or lines to which said lessee connects its well or wells."

Then follows a description of the land, as shown in the patent from the State, and a decree to intervener of title to the surface estate on defendant's disclaimer of such title.

The defendant duly perfected its appeal to this court, after its motion for new trial was overruled. But neither plaintiff nor intervener appealed.

Article 6627, Vernon's Texas Civil Statutes, reads: "All bargains, sales and other conveyances whatever, of any land, tenements and hereditaments, whether they may be made for passing any estate of freehold of inheritance or for a term of years; and deeds of settlement upon marriage, whether land, money or other personal thing; and all deeds of trust and mortgages shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice, unless they shall be acknowledged or proved and filed with the clerk, to be recorded as required by law; but the same as between the parties and their heirs, and as to all subsequent purchasers, with notice thereof or without valuable consideration, shall be valid and binding."

The pleas of innocent purchaser by plaintiff and intervener are predicated on that statute. But since there was no evidence, other than recitals in the instruments, to show payment of a valuable consideration by plaintiff or intervener, M. L. Banta, for the interests acquired by them under the instruments relied on, appellant's assignments of error to the findings of the trial court sustaining said pleas and awarding relief based thereon are sustained. Ackers v. Frazier, Tex.Civ.App., 220 S.W. 426; Johns v. Wear, Tex.Civ.App., 230 S. W. 1008; Davidson v. Ryle, 103 Tex. 209, 124 S.W. 616; Watkins v. Edwards, 23 Tex. 443; 43 Tex.Jur., p. 646; idem, sect. 406, p. 687, and decisions there cited.

Appellant presents the further contention that it established a complete chain of title from the common source of title to itself. The title claimed by it was to the mineral estate only, with express disclaimer of title to the surface estate. It therefore had the burden of showing a severance of the mineral from the surface estate. To show such severance, it introduced in evidence, over plaintiff's objection, the unrecorded contract of sale between the Houston & Texas Central Railway Company and James H. Banta, dated August 1st, 1882. As shown above, it was introduced as an ancient instrument, without proof of its execution by the parties thereto, and without proof of the predicate that it came from a proper custody; that it was admitted by the court for the time being and counsel for defendant thereafter failed to produce proof of the necessary predicate for its introduction. For that reason we sustain appellee's cross-assignments of error to the admission of that contract of sale. Emory v. Bailey, 111 Tex. 337, 234 S. W. 660, 18 A.L.R. 901; West v. Houston Oil Co., 56 Tex.Civ.App. 341, 120 S.W. 228, writ refused; Holmes v. Coryell, 58 Tex. 680; Flores v. Hovel, Tex.Civ.App., 125 S.W. 606; Hardin v. Sparks, 70 Tex. 429, 7 S.W. 769.

Nor does the acknowledgment of an ancient deed in the manner required by law dispense with proper proof of its execution under common-law rules of evidence. Wiggins v. Fleishel, 50 Tex. 57; Gaines' Administrator v. Ann, 26 Tex. 340; 17 Tex.Jur., sect. 312, page 729.

The record therefore must be considered as though the contract of sale had never been introduced in evidence.

The proper construction of that deed to Banta, with that elimination therefrom, is the next question to be determined.

In 14 Tex.Jur., sect. 135, p. 913, this is said: "Where a deed is to be construed by reference to its language alone, the jury have nothing to do with its proper interpretation; this is a question of law for the court."

And in sect. 138, p. 916, this is said:

"'The language of a deed is the language of the grantor, and if there is any doubt as to its construction, it should be resolved against him.'

"If it be conceded that there is ambiguity in a deed, and that it is susceptible of

two constructions, that one will be adopted that is most favorable to the grantee. This is a well settled rule applicable to many provisions of doubtful meaning in deeds as well as in contracts. Thus if repugnant clauses cannot be reconciled, the greatest estate will be conferred on the grantee that the language of either clause will permit, and the other clause will be rejected."

Many decisions are cited which support that text, including Curdy v. Stafford, 88 Tex. · 120, 30 S.W. 551; Cartwright v. Trueblood, 90 Tex. 535, 39 S.W. 930; Rettig v. Houston West End Realty Co., Tex. Com.App., 254 S.W. 765; Hoffman v. Magnolia Petroleum Co., Tex.Com.App., 273 S. W.·828; Stevens v. Galveston H. & S. A. Ry. Co., Tex.Com.App., 212 S.W. 639; Hancock v. Butler, 21 Tex. 804; Arden v. Boone, Tex.Com.App., 221 S.W. 265. And in Settegast v. Foley Bros. Dry Goods Co., 114 Tex. 452, 270 S.W. 1014, 1016, this is said: "Covenants or restrictive clauses in instruments concerning real estate must be construed strictly, favoring the grantee and against the grantor, and all doubts should be resolved in favor of the free and unrestricted use of the premises."

■ In 14 Tex.Jur., sect. 140, p. 919, the rule is announced that all provisions of a deed are to be given effect if this can be done.

With the elimination noted, the deed to James H. Banta by the trustees, of date August 3rd, 1885, was, on its face, a conveyance of the legal title to both the surface and mineral estate. And by the terms of the deed of trust the trustees were empowered to execute and deliver it to Banta.

■ That deed having been duly acknowledged and recorded in the records of deeds of Wichita County, it established a priority of right over title acquired by defendant under its unrecorded deed to the mineral estate of date October 9th, 1918, perforce of the registration statute, Article 6631, Vernon's Texas Civil Statutes. 36 Tex.Jur., sect. 40, p. 455, and decisions there cited, including, among others, Houston Oil Co. v. Village Mills Co., Tex.Com. App., 241 S.W. 122; Spencer v. Jones, 92 Tex. 516, 50 S.W. 118, 44 L.R.A. 716; Davis v. Lund, Tex.Com.App., 41 S.W.2d 57.

We do not believe this conclusion is in conflict with the holding of the Supreme Court in Rio Bravo Oil Co. v. McEntire, 128 Tex. 124, 95 S.W.2d 381, 387, 96 S.W. 2d 1110.

In that case, it appeared that the Houston & Texas Central Railway Company executed a deed of trust of date October 1st, 1872, to secure its bonds, and the land thereafter acquired by it from the state was conveyed to trustees with power of sale similar to that given in the deed of trust shown in the instant case. Further, that in 1882, the railway company, without complying with requirements of provisions of the deed of trust, executed its contract to sell to one Kelley three sections of land in part consideration for which Kelley executed his eight promissory notes reciting a vendor's lien retained to secure their payment. Later, during the pendency of a suit to foreclose the lien given by the deed of trust shown above and in which a receiver was appointed, the court granted permission to the trustees to execute to Kelley a deed of release and quitclaim to the three sections he had contracted to buy and same was executed. But in opinion of Justice Smedley in that case, it was held that it was apparent from the terms of the court's order and other facts, that the deed was nothing but a release of Kelley's land from the deed of trust lien, and not an independent deed of conveyance of title of the Houston & Texas Central Railway Company. In subsequent portions of the opinion this was said: "The Kelley contracts were not contracts for the sale of the land at a future time, but the contracts, together with the notes contemporaneously executed by Kelley for part of the purchase price, evidenced present sales and gave to Kelley an equitable title to the land with right of possession. * * * These contracts and notes accomplished a present sale of the land with reservation of the minerals and retention of vendor's lien and worked as effective a severance of the minerals from the surface as would have been made by an instrument in the form of a deed conveying the land with similar reservation of minerals and retention of vendor's lien."

The court then decreed to the Rio Bravo Oil Company title to the minerals so reserved and severed, as assignee of the Railway Company.

It is manifest that in the absence of proof of the contract of sale in the instant case, that conclusion would not be controlling here.

We conclude that defendant, Rio Bravo Oil Company, failed to establish a sever-

ance of the surface and mineral estates and a purchase by it of the mineral estate after such severance. That plaintiff and intervener acquired title to both of said estates, under instruments duly recorded, independently of their claims of title by limitation.

■ Furthermore, even if it be said that the deed from the trustees to James H. Banta, dated August 3rd, 1885, is not sufficient to support the plea of five years' limitation, because of its alleged reservation of the mineral estate in the land conveyed, nevertheless, plaintiff's and intervener's claims of title under their pleas of the ten-year statute of limitation were established by the uncontroverted testimony of M. L. Banta, that his father was in peaceable and adverse possession of the 160 acres, cultivating, using and enjoying the same, from 1885 to the date of his death in 1916, together with his specific assertion of adverse claim of title to the mineral estate also, evidenced by the several oil and gas leases executed thereon by him, beginning in the year 1909, and continuing up to the date of his death; and a continuation of the same character of possession of the land by his heirs, and also with their specific claim of adverse possession of the mineral estate evidenced by their action in mining stone therefrom, and executing oil and gas leases thereon after the death of their father.

■ Based on those conclusions, the judgment awarding plaintiff and intervener recovery against the Rio Bravo Oil Company is affirmed, independently of the theory on which the trial court based its judgment. In accordance with a well-settled rule of decisions of this State, warranting such action.

■ And it is also a further rule that the judgment of the trial court will not be reversed in the absence of error shown.

As a result of the foregoing conclusions, it would logically follow that intervener would have ground for reversal of the recovery by defendant of his ⅙th undivided one-sixth interest in the land which he inherited from his father, as shown in the judgment. But no cross-assignment of error is presented here sufficient to raise that point; the only suggestion thereof being in the general prayer at the conclusion of appellee's brief.

Accordingly, all assignments of error are overruled and the judgment is affirmed in its entirety.