George G. MacDONALD et al., Petitioners,

v.

Theo S. PAINTER, Jr., et al., Respondents.

No. B–944.

Supreme Court of Texas.

May 7, 1969.

Clark, Thomas, Harris, Denius & Winters, J. Sam Winters and Mary Joe Carroll, McGinnis, Lochridge, Kilgore, Byfield, Hunter & Wilson, Robert C. McGinnis and John W. Stayton, Jr., Austin, for petitioners.

Harry M. Whittington, Charles M. Babb, Austin, for respondents.

POPE, Justice.

Petitioners, George G. MacDonald and Kerry G. Merritt, as owners of three lots in the Mira Loma Subdivision to the City of Austin, instituted this suit for declaratory judgment against the owners of the twenty-seven other lots in the subdivision. They asked for a declaration that their three lots are not burdened with restrictions which prohibit their resubdividing the lots into six lots and thereafter constructing a duplex on each lot. The trial court sustained petitioners' motion for summary judgment and rendered judgment that the resubdivision and the erection of the duplexes did not violate the restrictions on the subdivision. The court of civil appeals reversed the judgment and remanded the cause for the determination of certain fact issues. 427 S.W.2d 127. We reverse the judgment of the court of civil appeals and affirm that of the trial court.

On June 15, 1925 Enfield Realty conveyed to Hallie Bremond Houston the property in Austin, Texas, known as Mira Loma Addition. The deed contained these restrictions which were applicable to the properties owned by respondents as well as the property owned by MacDonald and Merritt:

"1. No mercantile business of any kind shall ever be carried on, on the premises hereby conveyed; * * * it being understood that all improvements to be erected on said premises shall be built and used for residence purposes only, excepting such improvements as may be proper for use in connection with a residence.

"2 * * *

"3 * * *

"4. The premises hereby conveyed shall not be subdivided into tracts of less than one acre before January 1st. 1930, it being the intention of this paragraph and the agreement between the parties hereto that the premises hereby conveyed may be divided into tracts of one acre or more before such date and sold separately if desired by the grantee, but that smaller tracts than one acre may not be sold before such date; provided,

however, that this agreement may be modified by further agreement in writing between the Grantors and the Grantee, if they both so desire.

"The grantee in this conveyance accepts same subject to all the foregoing restrictions and conditions, which it is agreed shall be deemed to be covenants running with the land; and the grantee, for herself, her heirs, legal representatives and assigns, covenants to and with the grantor, their heirs and legal representatives, that she will, and that her heirs, legal representatives and assigns will forever faithfully observe all and each of the foregoing restrictions and conditions, whether or not they are repeated in subsequent conveyances of the above described property."

Hallie Bremond Houston proceeded to plat and subdivide the tract into thirty numbered lots to be known as Mira Loma Subdivision. She caused the plat to be recorded in March of 1938. It contained no restrictions and referred to none. Mrs. Houston thereafter conveyed lots in the subdivision, and the deeds to the twenty-seven lots owned by respondents contained restrictions which were additional to those contained in the original Enfield deed to Mrs. Houston. The problem in this case arises because Mrs. Houston conveyed lots 20, 21, and 22 to her children by a deed which contained no restrictions. Mrs. Houston's children later conveyed a part of the three lots to MacDonald and Merritt by a deed which also contained no restrictions. The lots are located on the southern edge of Mira Loma Subdivision. The restrictions in the several deeds, which burden the twenty-seven lots owned by respondents, but which are not contained in the chain of title to lots 20, 21, and 22, with minor variations as to frontage requirements, are:

"3. All improvements to be erected on said premises shall be built for residence purposes, or for use in connection with residences; and the main residence so erected thereon shall front on John D. McCall Road; the front building line of the land hereby conveyed shall be not less than 30 feet from the property line of said premises, fronting on John D. McCall Road; and no residence, or any part thereof, and no outbuildings of any kind, shall ever be erected or placed upon the space between said building line and said property line.

"4. Any residence to be built on the premises hereby conveyed shall be of original cost not less than $4000 if a one story, or $6000 if a two-story residence.

"5. The grantee in this conveyance accepts the same subject to all of the foregoing restrictions and conditions which it is agreed shall be deemed to be covenants running with the land; and the grantee, for himself, his heirs, legal representatives and assigns, agrees that he and his heirs, legal representatives and assigns shall forever faithfully observe all of the foregoing restrictions and conditions, whether or not they are repeated in subsequent conveyances of the above property. * * *."

MacDonald and Merritt, after acquiring their lots in 1965, resubdivided the lots into six lots and were preparing to erect duplexes on each lot when the attorney for Theo S. Painter, Jr., the adjoining lot owner to the north, advised them by a letter that such use of the property would violate the restrictions of Mira Loma. Painter acquired his property in 1961. The deed to him conveyed all of lot 23 to the north of lots 21 and 22 which are now owned by MacDonald and Merritt. The deed conveyed to Painter the south thirty-three and one-half feet of lot 24 which adjoined lot 23 on the north and also conveyed the north twenty feet of lots 21 and 22 which were south of lot 23. An earlier deed had also conveyed the west ten feet of lot 20. MacDonald and Merritt, by reason of these earlier conveyances, acquired by their 1965 deed less than the full lots as depicted for lots 20, 21, and 22 on the 1938 map.

The respondents say that a general plan or scheme was established for all the lots

in Mira Loma even though the deed to MacDonald and Merritt and their chain of title did not contain the restrictions. The trial court treated the general plan or scheme, evidenced by the restrictions in the deeds, as applicable to the three lots owned by MacDonald and Merritt. It construed the restrictions as though they were actually written into the deed to lots 20, 21, and 22. The court concluded, however, that the restrictions prohibited neither the construction of duplexes nor the resubdivision of the three lots into six lots.

The court of civil appeals reversed the summary judgment, since it held there were several fact issues such as (1) whether a general plan or scheme was established for all of the lots in Mira Loma Subdivision, (2) whether the property owners had abandoned the plan or scheme, (3) whether the property owners had waived their right to enforce such plan, and (4) whether the plans of MacDonald and Merritt conformed to the plan. If the trial court was correct in its conclusion that the restrictions do not prohibit the uses planned by MacDonald and Merritt, the four fact issues posed by the court of civil appeals do not arise. In our opinion the judgment of the trial court was a correct one.

The restrictions in the 1925 deed from Enfield Realty to Hallie Bremond Houston burdened all of the property of the respondents as well as that of MacDonald and Merritt. We assume, as did the trial court, that the deed restrictions contained in all the deeds to the twenty-seven lots also extended to the remaining three lots owned by MacDonald and Merritt. When we examine all of the restrictions in context and apply to them the settled rules of construction, we conclude that the covenants in question are free of uncertainty and ambiguity. Couch v. Southampton Civic Club, 313 S.W.2d 360 (Tex.Civ.App.1958), aff'd in part in Southampton Civic Club v. Couch, 159 Tex. 464, 322 S.W.2d 516 (1959); Rio Bravo Oil Co. v. Staley Oil Co., 138 S.W.2d 838, affirmed 138 Tex. 198, 158 S.W.2d 293 (1942); Couch v. South-

ern Methodist University, 10 S.W.2d 973 (Com.App.1928).

The deed from Enfield Realty imposed a restriction against use of the property in question for purposes other than "residence purposes." The restrictions stated in the deeds conveying the numbered lots in Mira Loma prohibited the construction of improvements except "for residence purposes, or for use in connection with residences." These restrictions do not prohibit the construction of the duplexes. "Restrictions which, without more, merely limit the use of the property to 'residence' purposes have generally been held not to have the effect of forbidding the erection or maintenance of multiple dwellings, the courts taking the view that such terms were directed only at the type of use to be made of the property, and not at the number of families which might make such use." Annotation, 14 A.L.R.2d 1381.

█ The terms "residence purposes," and "residences" require the use of property for living purposes as distinguished from uses for business or commercial purposes. Southampton Civic Club v. Couch, 159 Tex. 464, 322 S.W.2d 516 (1959); Pardo v. Southampton Civic Club, 239 S.W. 2d 141, 144 (Tex.Civ.App.1951, writ ref.); Vaccaro v. Rougeou, 397 S.W.2d 501 (Tex. Civ.App.1966, writ ref. n. r. e.). According to most authorities, the terms, without other limiting words, do not prohibit duplex living units. See, Bear v. Bernstein, 251 Ala. 230, 36 So.2d 483, 14 A.L.R.2d 1372; Weber v. Graner, 137 Cal.App.2d 771, 291 P.2d 173 (1956); Baker v. Smith, 242 Iowa 606, 47 N.W.2d 810 (1951); Sporn v. Overholt, 175 Kan. 197, 262 P.2d 828 (1953).

The court of civil appeals sustained respondents' contention that the phrase "the main residence" means a single family dwelling. A grammatical construction of the compound sentence in which the phrase is found, leads us to a conclusion contrary to that of the court of civil appeals. Fox v. Thoreson, 398 S.W.2d 88 (Tex.Sup.

1966). We repeat that part of the restrictions upon which respondents rely:

"3. All improvements to be erected on said premises shall be built for residence purposes, or for use in connection with residences; and the main residence so erected thereon shall front on John D. McCall Road; the front building line of the land hereby conveyed shall be not less than 30 feet from the property line of said premises, fronting on John D. McCall Road; and no residence, or any part thereof, and no outbuildings of any kind, shall ever be erected or placed upon the space between said building line and said property line."

The first independent clause stated in the third restriction concerns the restriction of the use to residence purposes. The conjunction "and" joins the next independent clause and a reading of it shows that it concerns the road or street upon which frontage is required. The third independent clause, which is not prefaced with a conjunction, provides for a set-back, and the fourth independent clause prohibits any construction between the building line and the property line.

The deeds to the lot owners in Mira Loma Subdivision were made a part of the summary judgment proofs to show the nature of the restrictions. Each deed contains the same restrictions. This was true though the property conveyed consisted of two lots, or two lots and part of another lot, or a part of a lot, or a few feet off of one lot and an alley. Regardless of the size of the premises conveyed, the restriction upon the premises conveyed was: "All improvements to be erected on said premises shall be built for residence purposes, or for use in connection with residences." The plural term, "residences," shows an intent to permit more than a single residence. The restrictive clause, as used in the several deeds, shows further that a residence was permissible upon mere portions of the originally platted lots.

■ The phrase "the main residence" must be construed in context with the preceding clause "all improvements * * * shall be built for residence purposes or for use in connection with residences; * * *." When we do that, and apply the settled rule that restrictions are construed strictly in favor of the grantee and against the grantor and in favor of the free and unrestricted use of the property, any uncertainty is removed. Couch v. Southampton Civic Club, 313 S.W.2d 360 (Tex. Civ.App.1958), aff'd in part 159 Tex. 464, 322 S.W.2d 516 (1959); Baker v. Henderson, 137 Tex. 266, 153 S.W.2d 465 (1941); Couch v. Southern Methodist University, 10 S.W.2d 973 (Com.App.1928).

■ We construe the restrictions to mean that provision was made for the required frontage upon certain streets and for a set-back from the street. These restrictions afford uniformity of structures along the street. The term "the main residence" was used in connection with the requirements that structures must be so positioned along the street as to keep the area between the building line and the street free from structures of any kind.

Several cases are cited by respondents in support of their contention that the restrictions mean there must be only one single family dwelling to each numbered and platted lot, but we do not regard them as analogous. In Fischer v. Reissig, 143 S.W.2d 130 (Tex.Civ.App.1940, writ ref.) a deed to a single lot contained this restrictive covenant: "The dwelling house * * * shall face the street upon which the lots front * * *." The court correctly held that "the" means one, when followed by the other adjective "dwelling." The restriction in that case did not include any plural terms. By way of contrast, the adjective, "main" used in the phrase "the main residence," in the Mira Loma restriction suggests more than one residence. In Curlee v. Walker, 112 Tex. 40, 244 S.W. 497 (1922) the restriction clearly provided for "one residence to two whole lots as

herein described." In Green v. Gerner, 283 S.W. 615, affirmed 289 S.W. 999 (Com. App.1927), the restriction in question was "no building other than one residence with the necessary and appurtenant out buildings and improvements shall occupy the lots herein sold."

Respondents also rely upon White v. Hansen, 36 S.W.2d 456 (Com.App.1931), as did the court of civil appeals. The court of civil appeals wrote as though the term "the main residence" was the restrictive term being construed and the one contained in the restrictions. The restriction construed in White v. Hansen was: "Said premises shall be used for private residence purposes only * * *." There was another restriction that "Any residence * * shall cost not less than $4000." Still another restriction required that "any residence * * * be 35 feet from the front property line." The term "the main residence," was not included in the restrictions. A lot owner began the erection of a servant's house which would cost about $1,000. Since the owner had plans only for constructing servant's quarters, the house was held in violation of the restrictions. The court distinguished servant's quarters from the main residence and held the main residence must be constructed without delay. That problem is different from the one before us. We conclude that the cases upon which respondents rely clearly prohibit units other than single family dwellings, whereas, the Mira Loma restrictions lack that clarity.

One further question remains, whether the restrictions prevent MacDonald and Merritt from resubdividing the platted lots 20, 21, and 22, into six lots. The dimensions of the three lots had already been altered by purchases made by the surrounding owners of portions of the three lots, and MacDonald and Merritt resubdivided lots which had already been altered.

The restrictions do not mention resubdivision, or expressly require one house per platted lot. The plat contains no re-

strictions of any kind. The 1925 deed from Enfield Realty to Mrs. Houston had a restriction against resubdivision of less than one acre before January 1st, 1930. The restrictions in the deeds executed after 1930 were silent about lot sizes, which suggests that after 1930 no limitation upon lot sizes was intended. All of the deeds which conveyed parts of Mira Loma were before the court on the summary judgment hearing. The deeds omit the use of the word "lot" in their statement of the restrictions, but make the restrictions applicable to the "premises" or "the land thereby conveyed," whether speaking of one lot, more than one lot, several lots, or even less than a lot as delineated on the map.

We have not found any helpful Texas decisions. Other jurisdictions have held that the mere filing of a map which depicted lots, but which had no declaration that restricted the size of lots, was not a prohibition upon the resubdivision into smaller lots. Roach v. Hostetter, 48 Cal. App.2d 375, 119 P.2d 749 (1941); Goodyear Heights Realty Co. v. Furry, 33 Ohio App. 432, 170 N.E. 23 (1929). The rule is stated in Turner v. Glenn, 220 N.C. 620, 18 S.E.2d 197 (1942):

"No covenant that the owner will not sell its land except in parcels delineated upon a map of record and with reference to which certain lots have been sold is implied by the making of such map and the sale of certain lots shown thereon, and the right of the owner to dispose of unsold portions of his lots singly or in bulk or by subdividing them into smaller parcels and selling them in such parcels is complete. Herold v. Columbia Investment & Real Estate Co., 72 N.J.Eq. 857, 67 A. 607, 14 L.R.A.,N.S., 1067, 129 Am. St.Rep. 718, 16 Ann.Cas. 580. See also Annotation, 57 A.L.R. 764. Such covenants cannot be implied from the mere making and filing of the map showing the different subdivisions, or by selling lots in conformity therewith. Farquharson v. Scoble, 38 Cal.App. 680, 177 P.

310, 14 L.R.A.,N.S., 1067; Gardner v. Maffitt, 335 Mo. 959, 74 S.W.2d 604, 95 A.L.R. 452."

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

REAVLEY, J., not sitting.