Andre **CRISPIN**, Chris **Brown** and Edward **Podoba**, Appellants,

v.

**PARAGON HOMES, INC.**, Deutser–Weil, Inc., NFM, Inc. & Arthur M. Deck & Assocs., Appellees.

No. 01–92–01253–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1994.

Rehearing Overruled Dec. 8, 1994.

Russell D. Weaver, Houston, for appellants.

Paul J. Dobrowski, Jennifer R. Tillison, Houston, for appellees.

Before DUGGAN, MIRABAL and O'CONNOR, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a declaratory judgment rendered upon cross-motions for summary judgment, interpreting and declaring the meaning of three provisions of a residential subdivision's deed restrictions. Appellants, Andre Crispin, Chris Brown, and Edward Podoba, and appellees, Paragon Homes, Inc., Deutser–Weil, Inc. and Arthur M. Deck & Associates, are all property owners in Crestwood Acres, a residential subdivision in Houston.

The original deed restrictions for Crestwood Acres were recorded in the Harris County deed records in 1940; the restrictions were amended in 1983, and filed in the deed records on December 30, 1983. It is undisputed that the amended restrictions were validly adopted.

Appellants and appellees each sought declaratory judgments in the district court as to the proper meaning and interpretation of three provisions of the amended restrictions. Both filed motions for summary judgment seeking rulings that, as a matter of law, their own interpretations of the three provisions were correct. The evidence considered by the trial court consisted of the original restrictions, the amended restrictions, and the original plat of the subdivision.

The parties' conflicting interpretations of the three provisions present three questions:

(1) Can the lots be subdivided to build single family residences on the subdivided portions without the consent of other lot owners?

(2) When can the owners amend the restrictions?

(3) How are the votes of owners of subdivided portions of lots to be calculated?

The conflicts involve the following provisions of the amended restrictions:

1. All lots in CRESTWOOD ACRES shall be used *only for single or multi-family residences, or condominiums,* and the usual accessory outbuildings used in connection with such land uses. . . .

. . . .

4. *Lots may be subdivided to provide building sites for multi-family residences or for condominiums, without the joinder of the owners of other lots* within CRESTWOOD ACRES, so long as the other applicable provisions of these restrictions are complied with. Nothing herein shall prevent the construction or use of a structure on or covering more than one lot. The *owners of subdivided portions of lots shall together have but one vote per portion as if each subdivided portion were one lot.*

. . . .

6. *All of the restrictions and covenants herein set forth shall become effective on the date one or more copies of this instrument are filed of record in the office of the County Clerk* of Harris County, Texas, bearing together the signatures of the owners of record of a majority of the lots in CRESTWOOD ACRES, and shall be effective until January 1, 1994, and shall automatically be extended thereafter for successive periods of ten (10) years; provided however, that *should the owners of a majority of the lots* in CRESTWOOD ACRES *desire to change, modify or eliminate said restrictions, they may do so by executing and acknowledging an appropriate agreement . . . and filing the same for record . . . within the one year period prior to January 1, 1994, or within the one year period prior to the expiration of any ten (10) year period thereafter.* Provided further, however, that amendments or modifications to permit broader land uses (except strip shopping center, restaurant, service station or retail use) may be effected by the filing of record of an instrument executed by the owners of a majority of the lots (and subdivided portions thereof) in CREST-WOOD ACRES at any time. No future amendment or modification of these restrictions shall have the effect of prohibiting or preventing a use of any lot or portion thereof lawfully commenced in conformity with the valid restrictions in force at the time of commencement of construction of structures intended for such land use.

(Emphasis added.)

The district court held that: (1) the lots could be subdivided to construct single family residences on the subdivided portions of such lots without joinder of the owners of the other lots of Crestwood Acres (granting appellees' motion and denying appellants' cross-motion); (2) a majority of lot owners could change, modify or eliminate the Amended Restrictions upon filing within the one year period prior to January 1, 1994 (denying appellees' motion and granting appellants' cross-motion); and (3) the subdivided portions of lots together have only one vote (denying appellees' motion and granting appellants' cross-motion).

On appeal, appellants seek reversal and rendition of part one of the district court's order, and affirmance of parts two and three; appellees seek affirmance of part one, and reversal and rendition on parts two and three.

### Subdivision of lots without joinder of other property owners

■ The trial court's first declaration in its judgment was that subdivision of original lots to provide building sites for single family residences on the subdivided portions is permitted under the amended restrictions without the joinder of other property owners. Because appellants had sought the district court's declaration to the contrary, they urge, in two points of error, that the trial court erred in failing to grant summary judgment in their favor on this point, and in granting summary judgment to the contrary.

The pertinent portions of provisions one and four of the amended provisions, set out above, state that lots "shall be used only for single or multi-family residences, or condominiums ..." and that lots "may be subdivided to provide building sites for multi-family residences or for condominiums, without the joinder of the owners of other lots...."

■ In considering the parties' arguments, our "primary concern ... is to ascertain and to give effect to the intentions of the parties ..." and to "examine and consider the entire instrument so that none of the provisions will be rendered meaningless." *R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518–19 (Tex.1980). In *Wilmoth v. Wilcox*, 734 S.W.2d 656 (Tex. 1987), the supreme court discussed the interpretation of restrictive covenants:

> [C]ovenants restricting the free use of land are not favored by the courts, but when they are confined to a lawful purpose and are clearly worded, they will be enforced. All doubts must be resolved in favor of the free and unrestricted use of the premises, and the restrictive clause must be construed strictly against the party seeking to enforce it.

*Id.* at 657 (citations omitted).[1]

■ The restrictions contain no *prohibition* against subdividing to construct single family residences. Appellants contend that the first sentence of section four has meaning only if it is construed to mean that subdivision for any reason other than for multi-family and condominiums is prohibited without the joinder of the other lot owners. However, this interpretation imposes a prohibition not contained in the plain language of the restrictions. It further conflicts with the principles announced in *Wilmoth.* We will not create implied prohibitions restricting the

free use of land. In interpreting sections one and four of the amended deed restrictions, it is apparent the majority of Crestwood Acres owners intended to broaden the potential use of the original 18 lots by allowing: (1) subdivision, and (2) multi-family housing, where neither was previously allowed.

The amended deed restrictions contain no provision that would render the appellees' intended use (to subdivide to construct single family residences) impossible. The fact that the amended restrictions contain language specifically *authorizing* subdivision "to provide building sites for multi-family residences or for condominiums, without the joinder of the owners of other lots," does not create any inferred prohibition against subdividing for other purposes.

Essentially, the first sentence of section four is not a restriction—it is an authorization allowing a certain use. Moreover, nothing in the deed restrictions prohibits subdivision for single family residences. In fact, provision one provides that "[a]ll lots in CRESTWOOD ACRES shall be used only for single or multi-family residences, or condominiums...." The use of the plural "residences" shows an intent to permit more than a single residence on the lots. *See MacDonald v. Painter*, 441 S.W.2d 179, 183 (Tex. 1969) (finding that the use of the plural term " 'residences' shows an intent to permit more than a single residence.")

In *Finkelstein v. Southampton Civic Club*, 675 S.W.2d 271, 275 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), this Court examined a set of deed restrictions and held that where no provision expressly prohibited subdivision but, by the manner of subdividing, a party violated three other deed restric-

---

1. The dissent characterizes the adoption of Tex. Prop.Code Ann. § 202.003(a) (Vernon Supp.1994) (providing for a restrictive covenant to be liberally construed to give effect to its purposes and intent) as a reversal of these long-held principles for interpreting deed restrictions. 887 S.W.2d at 83. (O'Connor, J., dissenting). We disagree. We are unable to discern a conflict between liberally construing a restrictive covenant to give effect to its purpose, and construing a restrictive covenant either to favor the free and unrestricted

use of land or to strictly construe it against the party seeking to enforce it. Furthermore, section 202.003(a) was effective on June 18, 1987. Act of June 18, 1987, 70th Leg., R.S., ch. 712, § 6, 1987 Tex.Gen.Laws 2585, 2588 (limiting the effectiveness of certain amendments to new litigation but not so limiting section 202.003(a)). The supreme court decided *Wilmoth* on July 1, 1987, and denied a motion for rehearing on September 16, 1987. In its decision, the supreme court also failed to recognize that the property code had overruled the principles upon which it relied.

tions, such subdivision was prohibited. *Finkelstein,* 675 S.W.2d at 275–78. Unlike the *Finkelstein* restrictions, subdividing and building single family homes does not violate any of the other restrictions.

As a matter of law, the trial court correctly granted summary judgment on this issue to the appellees while at the same time denying relief to the appellants. We overrule the appellant's first and second points of error. We affirm part one of the trial court's judgment.

**Effective date of amendments to deed restrictions**

The trial court's second declaration in its judgment was that a majority of lot owners could amend the amended restrictions, *effective immediately,* upon filing amendments within the one year period prior to January 1, 1994. Because appellees sought a declaration to the contrary, they assert in their first cross-point of error that the trial court erred in so holding.

Paragraph six provides that the amended restrictions

> become effective on the date one or more copies ... are filed of record in the office of the County Clerk ... and shall be effective until January 1, 1994, and shall automatically be extended thereafter for successive periods of ten (10) years; *provided however, that* should the owners of a majority of the lots in Crestwood Acres desire to change, modify or eliminate said restrictions, they may do so by executing and acknowledging an appropriate agreement in writing for such purpose and filing the same for the record in the manner then required for the recording of land instruments, within the one year period prior to January 1, 1994, or within the one year period prior to the expiration of any ten (10) year period thereafter.

(Emphasis added.) Appellees argue that this provision clearly and unequivocally establishes that the amended restrictions were effective until January 1, 1994. They interpret the language as unconditionally establishing the duration of the initial and any succeeding term of restriction amendments, such that no modification or change undertaken within the last year of the initial 10-year period can be effective before January 1, 1994. We disagree.

■ This interpretation ignores the subsequent condition that restricts the sense of what went before. "The word 'provided' in common speech naturally expresses a qualification, limitation, condition, or an exception respecting the scope and operation of the words previously used." *Kiggins v. Kennon,* 197 S.W.2d 182, 184 (Tex.Civ.App.—Galveston 1946, no writ). Here, the words "provided however, that" condition or limit the sentence's earlier provisions that spell out the term of the amended restriction. Wherever possible, a covenant should be construed to give effect to all of the provisions and to avoid rendering any provision meaningless. *Memorial Hollow Architectural Control Comm. v. Mapes,* 610 S.W.2d 230, 232 (Tex. Civ.App.—Houston [14th Dist.] 1980, no writ). The district court's interpretation correctly gives meaning to the entire provision. The amended restrictions are effective until January 1, 1994, *unless* the required number of property owners, during the one year period prior to January 1, 1994, execute and file for record another agreement. If this is done, the amended restrictions become effective when filed for record.

We overrule appellees' first cross-point. We affirm part two of the trial court's judgment.

**Voting rights of lot owners**

■ The trial court agreed with appellants' interpretation of the amended restrictions to provide that there will only be one vote per lot, regardless of a lot's subdivision into portions. By their second cross-point, appellees complain·that the trial court erred by not finding that each portion of a subdivided lot will have one vote. We agree with the appellees.

The pertinent language from section four is as follows: "The owners of subdivided portions of lots shall together have but one vote per portion as if each subdivided portion were one lot." Appellants admit that the sentence "could have been more artfully drafted."

The quoted language indicates an intention to alter the total number of votes from the original 18, as subdivision of lots into portions of lots occurs. Such a result does not render the provision unartful or ambiguous. Considering sections one and four, which allow for multi-family dwellings on portions of lots, we find that the quoted language artfully gives one vote to the owner of a single family dwelling on a portion of a subdivided lot, and at the same time, prevents multiple owners of multi-family residences located on one portion of a subdivided lot from having more than one vote for their portion. In light of the whole agreement, a plain reading of the voting provision shows an intention to treat subdivided portions of lots as new lots. We hold the voting provision is not unclear or ambiguous, but gives one vote to each subdivided portion of a lot.

The interpretation urged by appellants and given by the trial court would render the last eight words of the voting provision ("as if each subdivided portion were one lot") meaningless. "Whenever possible covenants should be construed to give effect to all of the provisions and to avoid rendering any provision meaningless." *Mapes*, 610 S.W.2d at 232.

We grant appellees' second cross-point. We reverse part three of the trial court's judgment, and render in favor of appellees.

We affirm parts one and two of the trial court's judgment; we reverse part three of the trial court's judgment, and render in favor of appellees' interpretation of the voting provisions, i.e., that each subdivided portion of a lot has one vote.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

I dissent from the majority's resolution of point of error one. I believe the deed restrictions prohibit the appellees from subdividing a lot to construct single family residences unless the other owners agree. I agree with the appellants that the first sentence of section four means that the property owners cannot subdivide a lot to use for single-family residences on the subdivided portions of the lot without the joinder of the other lot owners. That sentence states:

> Lots may be subdivided to provide building sites for multi-family residences or for condominiums, without the joinder of the owners of other lots within Crestwood Acres....

By that sentence, a lot owner may, without joinder, subdivide to create building sites for two types of residences: (1) multi-family residences and (2) condominiums. Nothing in that sentence, or in any other part of the restrictions, gives the lot owners any other permission to subdivide without joinder of the other lot owners. Because the restrictions do not permit an owner to subdivide a lot to create separate, single-family dwellings on the subdivided portions, the lot owner who wants to divide a lot to build separate, single-family dwellings on the parts of subdivided lot must seek joinder of the other lot owners.

The majority relies on *Wilmoth v. Wilcox*, 734 S.W.2d 656 (Tex.1987), and *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517 (Tex.1980), for three propositions that have been legislatively overruled: (1) covenants restricting the free use of land are not favored by the courts; (2) all doubts must be resolved in favor of the free and unrestricted use of the premises; and (3) the restrictive clause must be construed strictly against the party seeking to enforce it. *Wilmoth*, 734 S.W.2d at 657.

In 1987, the Texas Legislature enacted Chapter 202, "Construction and Enforcement of Restrictive Covenants." TEX.PROP.CODE ANN. §§ 202.001–202.005. Section 202.002(a) specifies that chapter 202 of the Property Code applies to "all restrictive covenants, regardless of the date on which they were created." Section 202.003(a) provides that "A restrictive covenant shall be liberally construed to give effect to its purposes and intent."

In resolving this case, we are required to follow section 202.003(a) of the Property Code. Contrary to what the majority states, covenants restricting the free use of land are no longer disfavored; no longer are we to resolve doubts in favor of the free and unrestricted use of the premises; and no longer

must we construe the covenant strictly against the party seeking to enforce it.[1]

Thus, we should give intent to the purposes of the document, not, as the majority says, to those seeking to set it aside.

---

1. In footnote 1, the majority states that it does not discern a conflict between section 202.003(a), which requires us to liberally construe restrictive covenants to give effect to their purposes and intent, and the Supreme Court's statement in *Wilmoth*, that covenants restricting the free use of land are not favored. For years the Supreme Court said the courts do not and should not favor restrictive covenants; in 1987, the Legislature legislatively overruled the Supreme Court and told the courts to favor restrictive covenants. The majority is correct when it states that the Supreme Court did not acknowledge the change when it issued *Wilmoth*.