Paige HERBERT and Charleta
Dunn, Appellants,

v.

POLLY RANCH HOMEOWNERS
ASSOCIATION, Appellee.

No. 01–95–00702–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 8, 1996.

Dissenting opinion on denial of rehearing
by Justice Wilson, Jan. 23, 1997.

Robert Clements, Alvin, for Appellants.

Marilyn Mieszkuc, Houston, for Appellee.

Before O'CONNOR, COHEN and
WILSON, JJ.

## OPINION

O'CONNOR, Justice.

The issue presented by this case is whether building two, single family homes on a single platted lot violates a subdivision restriction. The appellee, Polly Ranch Homeowners Association (the association), filed a

declaratory judgment requesting construction of its subdivision restrictions. Appellants Herbert and Dunn (the homeowners) filed counterclaims for declaratory judgment. After a bench trial, the trial court entered judgment for the association. The homeowners filed this appeal. We reverse and render judgment in favor of the homeowners.

Polly Ranch Estates was originally platted in 1953 and replatted in 1955. In 1954, the original developer filed restrictions that prohibited subdivision of any tract of land purchased in the subdivision. A few of the original lots were sold, and in 1968, the remainder of the land was conveyed to Polly Ranch Estates, Inc., which was owned by R.V. Kliesing and Billy McAninch.

In 1971, the Galveston County Commissioners Court vacated the 1955 plat at the request of Polly Ranch Estates, Inc. The owners of the lots that had already been sold filed suit against Polly Ranch, Inc.[1] contending that Polly Ranch, Inc. could not replat the subdivision because the 1954 restrictions prohibited subdivision of the original lots.

The *Bacon* plaintiffs and Polly Ranch Estates, Inc. settled the lawsuit after agreeing on a replat that was acceptable to both sides. As a result of the agreed judgment, the subdivision restrictions, which were written by the developer Billy E. McAninch, and the agreed plat were recorded in Galveston County, Texas in 1973.

The 1973 restrictions provided 194 lots for single family residences and six reserves that were set aside for the construction of townhouses. Before the homeowner's association was formed, the developer subdivided six of the 194 lots and sold them to adjoining landowners resulting in larger homesites. The sales did not result in more than one residence per platted lot.

The homeowners in the present lawsuit sought permission to subdivide their lots so that an additional home could be built on the

subdivided lot. The present litigation followed.

The homeowners and the association filed cross-motions for summary judgment. The association's motion was denied; the homeowners never obtained a ruling on their motion. The case was tried to the bench. The court held:

1. that the homeowners take nothing in their action for declaratory relief;

2. that the 1954 restrictions are not applicable to lots 1–194;

3. that the 1973 restrictions mandated no more than one single family dwelling per platted lot on 1–194;

4. that Herbert was enjoined from building an additional dwelling or selling the additional lot for the purpose of building an additional dwelling; and

5. that costs be assessed against the homeowners.

In related points of error two, three, and four, the homeowners contend the trial court erred by concluding that the 1973 deed restrictions prohibit building more than one single family residence on each of the 194 originally platted lots.

### Standards of Review

■ In 1987, the legislature added provisions governing restrictive covenants to the Texas Property Code which apply to "all restrictive covenants regardless of the date on which they were created." TEX.PROP. CODE § 202.002 (1996); *Candlelight Hills Civic Ass'n, Inc. v. Goodwin,* 763 S.W.2d 474, 477 (Tex.App.—Houston [14th Dist.] 1988, writ denied). TEX.PROP.CODE § 202.001(4) (1996) defines "restrictive covenant" as "any covenant, condition, or restriction contained in a dedicatory instrument, whether mandatory, permissive, or administrative." TEX. PROP.CODE § 202.003 (1996) requires such covenants to be liberally construed "to give

---

1. *Marvin Bacon, et ux, James Pearson, et ux, Ivan Loomix, et ux, Robert Bilderback, et ux and Claude A. Newman, et ux. v. Polly Ranch Estates,* *Inc.,* cause number 109,894, in the 10th Judicial District Court, Galveston County (the *Bacon* lawsuit).

effect to their purposes and intent." *Boudreaux Civic Ass'n v. Cox,* 882 S.W.2d 543, 547 (Tex.App.—Houston [1st Dist.] 1994, no writ); *Candlelight Hills,* 763 S.W.2d at 477. TEX.PROP.CODE 202.004(a) (1996) creates a presumption that a property owners' association or other representative exercises discretionary authority reasonably "unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory." *Gettysburg Homeowners Ass'n, Inc. v. Olson,* 768 S.W.2d 369, 372 (Tex.App.—Houston [14th Dist.] 1989, no writ).[2] Agreements such as the restrictions in this case are treated as contracts between the parties. *Boudreaux Civic Ass'n,* 882 S.W.2d at 547.

The restriction at issue in this case provides in part:

> WHEREAS, POLLY RANCH ESTATES, INC., is the owner of a subdivision known as Polly Ranch Estates, commonly known as the Butler Pasture and part of the Sarah McKissick and John Dickinson Surveys and Lot 28 of Voss Subdivision in Galveston County, Texas, and with plat recorded in the Map Records in the office of the county Clerk of Galveston County, Texas, Map Record 15, page 4.

> WHEREAS, in order to protect fully both the interest of POLLY RANCH ESTATES, INC., being the owner of the aforementioned subdivision, and future owners of lots in said subdivision and in order to maintain a uniform plan for the improvement and development of said property as a restricted and modern subdivision; NOW THEREFORE, KNOW

> ALL MEN BY THESE PRESENTS; The hereinafter protective restrictions shall run with the land, as described in the aforementioned plat, and shall be binding on all parties and all persons claiming under them for a period of twenty-five years from 30 May 1973 to 30 May 1998....

> *1. Lots One (1) through One Hundred ninety-Four (194) inclusive in said tract shall be used for residential purposes only;* Reserves "A", "B", "C", "D", "E" and "F" of said tract are set aside and shall be used for multifamily units (commonly known as townhouses); Reserve "G" is set aside for use as a Park and hereinafter described; Reserve "H" is set aside for possible future use for water treatment facilities as hereinafter described; Reserves "I" and "J" are set aside to be used in conjunction with the airstrip as hereinafter described; and Reserves "K" and "L" fronting F.M. 518 are set aside to be used for commercial purposes as hereinafter described. *Single family dwellings only shall be constructed on Lots One (1) through One Hundred Ninety–Four (194) inclusive. Bona fide servant quarters may be attached or separate from the dwelling.* (Emphasis added.)

■ The issue in this case is not whether the lots may be subdivided. Indeed, several of the lots have already been subdivided by Polly Ranch Estates, Inc. The issue is whether one lot can be subdivided into two lots and a single family dwelling built on each part of the lot that was originally one lot.

The homeowners contend the language of the restriction does not expressly prohibit

---

2. Before the enactment of TEX.PROP.CODE § 202.003 (1996), covenants restricting the free use of land were not favored by the courts. *See, e.g., Wilmoth v. Wilcox,* 734 S.W.2d 656, 657 (Tex.1987). The association argues that this standard of review was legislatively overruled by § 202.003, which requires us to liberally construe restrictive covenants to give effect to their purposes and intent. Even though *Wilmoth* was decided after the effective date of § 202.003, the association argues that issue was never raised in that case. Copies of the briefs filed before the supreme court in *Wilmoth* show that the effect of § 202.003 was not an issue. The association is

correct about the adoption of § 202.003 and the *Wilmoth* case.

Even after the enactment of § 202.003, this Court stated that covenants restricting the free use of land were not favored. *See, e.g., Crispin v. Paragon Homes, Inc.,* 888 S.W.2d 78, 81 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (quoting *Wilmoth*); *compare with Boudreaux Civic Ass'n,* 882 S.W.2d at 547. It is not necessary for us to resolve such discrepancies today because under either approach we would reach the same result in this case.

two homes on one lot, therefore their plans are in compliance with the restrictions. The association counters that it was the drafter's intent to limit each platted lot to one single family residence.

In *Brown v. Wehner*, 610 S.W.2d 168, 169–70 (Tex.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), the homeowner wanted to place three residences on a parcel of land comprising two original lots as designated on the subdivision plat. The restriction in question provided:

4—BUILDING SITES. *No building site shall have less than ten thousand (10,000) square feet in area, or a front width of less than sixty-one (61) feet,* and no building may be erected on property having an area or frontage less than these minimum requirements. The side and front line clearances provided in the preceding restriction (that is, clearance from the property lines of the building site) shall be continuously maintained as to all improvements *and there shall be no resubdivision or division of lots in such manner as will impair the minimum side and front line clearance required.*

7 ... *[A]ll lots or buildings sites composed of one or more lots* in Pine Wood Estates, *shall be used for single family residential purposes only, and no structure shall be altered, placed, erected, or permitted to remain on any lot* (or building site) *except one single family residence. ...*

(Emphasis added.)

This Court held that because the plaintiff's additional residences would not impair minimum building site clearances as specified in the restriction, the proposed subdivision of the plaintiff's lots did not violate the terms of the restriction, even though the restrictions specifically stated that only one single family dwelling per lot was permitted. *Id.* at 170.

In this case, like in *Brown*, there are specific set-back requirements that govern the placement of homes on each lot. Restriction three provides:

The front extremity of the residence shall be built no nearer than forty (40) feet from the front property line. No other building line shall be nearer than fifteen (15) feet to the side property lines or fifteen (15) feet to the rear property line. Outbuildings shall be located to the rear of the residence. On those lots which border the air strip, the rear building line shall be no nearer the property line than twenty-five (25) feet.

It is undisputed that each homeowner's lot is large enough to be subdivided into two lots, with an additional house placed upon the subdivided lot that meets the set back requirements of restriction three. Furthermore, in this case, there is no express prohibition against more than one dwelling house per lot, as there was in *Brown*. Therefore, under the reasoning of *Brown*, the homeowners should be allowed to place an additional home on the new lot created by subdividing their existing lots.

The association argues that *Brown* is distinguishable because the restriction in *Brown* specifically permitted the subdivision on lots, whereas the present restriction does not. However, as stated earlier, whether the lots can be subdivided is not an issue in this case. Given that the lots can be subdivided, nothing prohibits building a second home on the new lots created by subdividing the existing lots, provided that the set back requirements can be met. There is nothing in the restrictions to show that subdivision can only occur if it serves to increase the size of a homesite.

■ The association also argues that testimony regarding the framer's intent when the restriction was drafted compels the conclusion that only one home per platted lot was contemplated. Mr. Billy McAninch, one of the developers of Polly Ranch, drafted the 1973 restrictions after the parties reached an agreement in the *Bacon* suit. McAninch testified that he specifically referred to the 1973 plat in the restrictions because it represented the size of the lots that the parties had agreed upon in the 1973 settlement. McAninch further testified that he envisioned only

one home on each of the lots numbered one through 194 on the 1973 plat. He testified that he anticipated 194 homes would be built on 194 lots.

McAninch testified that by referring to "the dwelling" in the singular in the last line of the restriction, he intended only one house per lot to be built. He testified he used the plural "dwellings" only one time, and he felt it was necessary in that instance to make the sentence grammatically correct. He used the plural "dwellings" to match the plural "lots."

The homeowners counter that testimony regarding the framer's intent is not admissible absent a finding that the restriction is ambiguous, and that we should disregard McAninch's testimony because there was no such finding in this case. Both parties in this case agree that the restrictions are unambiguous, and the trial court did not find any ambiguity. Nevertheless, the court considered, and apparently found persuasive, McAninch's testimony about his intentions when drafting the restrictions.

▆▆▆ In interpreting restrictive covenants, it is our task to determine the intent of the framers. *Wilmoth,* 734 S.W.2d at 658. However, parol evidence is not admissible to vary the terms of an unambiguous document. *Massey v. Massey,* 807 S.W.2d 391, 405 (Tex. App.—Houston [1st Dist.] 1991, writ denied). The "parol evidence rule" renders inadmissible any testimony to vary the legal effect of a writing in the absence of ambiguity, accident, mistake, or fraud. *Hartford Ins. Co. v. Commerce & Indus. Ins. Co.,* 864 S.W.2d 648, 650 (Tex.App.—Houston [1st Dist.] 1993, writ denied). The inadmissible testimony, objected to or not, is without probative force and will not support any finding. *Id.* Because there was no finding of ambiguity in this case, McAninch's testimony has no probative value even though it was admitted without objection.[3]

After considering the plain language of the restriction, we conclude that the homeowners should be allowed to place more than one house on each originally platted lot, provided that all other set back requirements are met. Therefore, we sustain points of error two, three, and four.

In light of our disposition of points of two, three, and four, we need not address the homeowners' remaining points of error, and decline to do so.

We reverse the judgment of the trial court and render judgment for the homeowners.

WILSON, J., dissenting.

WILSON, Justice, dissenting.

I respectfully dissent.

The homeowners rely primarily on a case I find similar, but distinguishable. In *Brown v. Wehner,* 610 S.W.2d 168, 169–70 (Tex. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), the homeowner wanted to place three residences on a parcel of land comprising two original lots as designated on the subdivision plat. The restriction in question provided:

4–BUILDING SITES. *No building site shall have less than ten thousand (10,000) square feet in area, or a front width of less than sixty-one (61) feet,* and no building may be erected on property having an area or frontage less than these minimum requirements. The side and front line clearances provided in the preceding restriction (that is, clearance from the property lines of the building site) shall be continuously maintained as to all improvements *and there shall be no resubdivision or division of lots in such manner as will impair the minimum side and front line clearance required.*

. . . .

7 ... *[A]ll lots or buildings sites composed of one or more lots* in Pine Wood

---

**3.** We note that in *Wilmoth,* 734 S.W.2d at 658, the supreme court considered the testimony of the developer of a subdivision in construing a restrictive covenant. We have reviewed the briefs filed in *Wilmoth* and the opinion of the court of appeals and note that the parol evidence rule was never raised as an issue in that case.

Estates, *shall be used for single family residential purposes only, and no structure shall be altered, placed, erected, or permitted to remain on any lot* (or building site) *except one single family residence. . . .*

(Emphasis added.)

This court held that because the plaintiff's additional residences would not impair minimum building site clearances as specified in the restriction, the proposed subdivision of the plaintiff's lots did not violate the terms of the restriction. *Id.* at 170.

In *Brown,* the density of homes within the subdivision was controlled by strict requirements on building site width (61 feet) and side and front line clearances. Because the plaintiff was able to meet all these requirements, this Court permitted the plaintiff to subdivide his lots and erect three homes on two lots. The restrictions specifically allowed homes to be built on sites that were 62 feet wide, regardless of the size of the originally platted lots.

However, in this case there is no specific provision for the width of building sites, although there are set back requirements.[1] These set back requirements govern the placement of a home on a building site, but do not address the size of the building site itself. That is, nothing in these restrictions governs the *density* of homes within the neighborhood, except the disputed requirement of one house per platted lot. Because the restriction in *Brown* specifically allowed building sites that were smaller than the original platted lots, I do not find that it controls the resolution of the present case.

In *MacDonald v. Painter,* 441 S.W.2d 179, 180 (Tex.1969), the owners wanted to subdivide their three lots into six lots and then build a duplex on each lot. The restriction at issue provided:

3. All improvements to be erected on said premises shall be built for *residence purposes,* or for use in connection with *residences;* and *the main residence* so erected thereon shall front on John D. McCall Road; the front building line of the land hereby conveyed shall be not less than 30 feet from the property line of said premises, fronting on John D. McCall Road; and no residence, or any part thereof, and no outbuildings of any kind, shall ever be erected or placed upon the space between said building line and said property line.

*Id.* at 183 (emphasis added). The court held that the use of the plural term "residences" showed an intent to permit more than a single residence. *Id.* The court also stated that the term "main residence" suggested more than one residence was permissible. *Id.*

Again, the language of the restriction in the present case is distinguishable. The clause at issue provides:

*Single family dwellings* only shall be constructed on lots One (1) through One Hundred Ninety–Four (194) inclusive. Bona fide servant quarters may be attached or separate from *the dwelling.*

Although the first sentence of the clause contains the plural "single family dwellings," the very next sentence states that servant quarters may be attached or separate from "the dwelling." In fact, restriction three also refers to a single dwelling:

The front extremity of *the residence* shall be built no nearer than forty (40) feet from the front property line ... Outbuildings shall be located to the rear of *the residence.*

When read as a whole, I believe the restriction contemplates only one single-family dwelling on each of the 194 originally platted

1. Restriction three provides:
   The front extremity of the residence shall be built no nearer than forty (40) feet from the front property line. No other building line shall be nearer than fifteen (15) feet to the side property lines or fifteen (15) feet to the rear property line. Outbuildings shall be located to

   the rear of the residence. On those lots which border the air strip, the rear building line shall be no nearer the property line than twenty-five (25) feet.
   It is undisputed that an additional residence can be placed on each homeowner's lot that meets these set back requirements.

lots. I find support for this position in *Fischer v. Reissig*, 143 S.W.2d 130, 131 (Tex. App.—Austin 1940, writ ref'd).

In *Fischer*, the restriction provided:

The dwelling house, as distinguished from outhouses and servant's quarters, shall face the street upon which the lot fronts, and no part thereof shall be nearer than 25 feet to the front property line. All other structures shall be in the rear of the dwelling house.

*Id.* at 130. The court held that even though there was no prohibition against building more than one dwelling house on each lot, the use of the article "the" before "dwelling house" indicated only one such dwelling house should be located on each lot. *Id.* at 131.

In the restrictions in this case, there are several references to "the dwelling" and "the residence." In only one instance was the plural used: "Single family dwellings only shall be constructed on Lots One (1) through One Hundred Ninety–Four (194) inclusive." The use of the plural "dwellings" was necessary to correspond with the plural "lots."

In addition to the plain construction of the language used in the restriction, testimony about the framer's intent when the restriction was drafted also compels the conclusion that only one home per platted lot was contemplated. Mr. Billy McAninch, one of the developers of Polly Ranch, drafted the 1973 restrictions after the parties reached an agreement in the *Bacon* suit. McAninch testified that he specifically referred to the 1973 plat in the restrictions because it represented the size of the lots that the parties had agreed upon in the 1973 settlement. McAninch further testified that he envisioned only one home on each of the lots numbered one through 194 on the 1973 plat. He testified that he anticipated 194 homes would be built on 194 lots.

McAninch testified that on a few occasions, Polly Ranch sold portions of lots to adjacent landowners. The effect of these sales was to increase the lot size. In no instance was a home built on a lot smaller than those originally platted. On one occasion half of lot five and half of lot 6 was sold, resulting in a lot equal in size to the original lots. In no case was a home built on a site smaller than the original platted lots.

McAninch testified that by referring to "the dwelling" in the singular in the last line of the restriction, he intended only one house per lot to be built. He testified he used the plural "dwellings" only one time, and he felt it was necessary in that instance to make the sentence grammatically correct. He used the plural "dwellings" to match the plural "lots."

The majority disregards McAninch's testimony by relying on the parol evidence rule, which it argues makes the testimony not only inadmissible, but also of no probative value whatsoever, even if it is admitted without objection. However, in *Wilmoth*, the Supreme Court instructed us that when interpreting restrictive covenants, it is our task to determine the intent of the framers. *Wilmoth*, 734 S.W.2d 656, 658. In *Wilmoth*, the court considered the testimony of the developer of the subdivision in construing a restrictive covenant, even though there was no finding that the covenant was ambiguous. *Id.* In light of *Wilmoth*, I believe we should consider McAninch's testimony to determine the intent of the framers.

The plain language of the restrictions when considered as a whole, and the testimony regarding the framer's intent, lead me to conclude that the restrictions in this case impose a requirement of only one home per platted lot.

I would affirm the judgment of the trial court.

## ORDER

PER CURIAM.

We deny appellee Polly Ranch Homeowners Association's, motion for rehearing.

It is so ORDERED.

WILSON, J., dissents from this ruling.

WILSON, Justice, dissenting from denial of Motion for Rehearing.

Because the majority declines to reconsider and alter its opinion in light of appellee's motion for rehearing, I respectfully dissent. I would grant both of appellee's points of error on rehearing, and affirm the trial court's ruling in favor of appellee.

I suggest that a fundamental error in the reasoning of the majority lies in its assumption of the continuing value as precedent of *Brown v. Wehner*, 610 S.W.2d 168, 169–70 (Tex.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), given the passage of TEX.PROP. CODE ANN. § 202.003, subsequent to the *Brown* decision.

If I understand the majority correctly, it reasons: (1) the restrictions are not ambiguous; (2) the restrictions contain no express prohibition against more than one dwelling house per lot; (3) the restrictions contain no express prohibition from subdividing the lots as originally platted;[1] and (4) the appellant's proposal would not violate any other prohibition (such as set back requirements) contained in the restrictions. The majority expresses its conclusion as "[g]iven that the lots can be subdivided, nothing prohibits building a second home on the new lots created by subdividing the existing lots, provided that the set back requirements can be met. There is nothing in the restrictions to show that subdivision can only occur if it serves to increase the size of a homesite." majority op. at 909. The majority cites *Brown* as supporting its holding. *Id.*

Although I think that the restriction sought by the homeowners can be fairly implied from the unambiguous language of the covenants (see my previous dissent), it is true that no explicit provision exists in the restrictions to prohibit the manner in which appellants seek to use their land. It is equally true that nothing contained in the restrictions explicitly permits the planned use. I suggest the proper application of 202.003 to the interpretation of the restrictive covenants requires us to uphold the restriction of land use desired by the homeowners association.

Would *Brown* have been decided the same way if our court had had 202.003 to consider during its deliberations? *See Crispin v. Paragon Homes, Inc.*, 888 S.W.2d 78, 83 (Tex. App.—Houston [1st Dist.] 1994, writ denied). I believe the plain language of the statute alters fundamentally the legal view of restrictive covenants. "For years the Supreme Court said the courts do not and should not favor restrictive covenants; in 1987, the Legislature legislatively overruled the Supreme Court and told the courts to favor restrictive covenants." *Crispin*, 888 S.W.2d at 84 n. 1.

"In construing the pertinent and relevant covenants so that their purposes, intents, intendments, and intentions be made effective, it is mandatory that the fact-finder ascertain such elements as the purposes, intents, and intentions of the developers in preparing and making a public record of the restrictive covenants, restrictions, and other limitations governing...." *Sargent v. Smith*, 863 S.W.2d 242, 250 (Tex.Civ.App.—Beaumont 1993, no writ).

I would consider all of the evidence which the majority finds "inadmissible, objected to or not, [and] ... without probative force...." majority op. at 910. When properly considered, I find the evidence overwhelming in supporting the conclusion of the trial judge.

I would grant rehearing and affirm the judgment of the trial court.

---

1. On this issue, the majority looks at the evidence and notes that Polly Ranch had previously subdivided its originally platted lots. This observation is used to buttress its reading of the restrictions to contain no prohibition against subdivision of lots generally. However, at the same time the majority looks at this evidence to support its view of the restrictions, it ignores the same evidence as indicating how in fact the previous subdivision of the lots had taken place. All other lots "subdivided" at Polly Ranch previous to this case resulted in larger lots, not smaller ones. The trial judge apparently found this relevant and important.