The Honorable Timothy Hutchinson State Representative 5417 Pinnacle Point Drive, Suite 500 Rogers, AR 72758
Dear Representative Hutchinson:
I am writing in response to your request for an opinion concerning the collection of volunteer fire department dues. Specifically, you pose the following questions:
 Whether the term "residence" as used in [Ark. Code Ann. § 14-20-108(a)(1)(B)(i)(a)], is referencing an occupied residential structure or simply a residential structure?
RESPONSE
In my opinion, the word "residence" as used in A.C.A. §14-20-108(a)(1)(B)(i)(a), as amended by Act 2145 of 2005, means simply a residential structure. The pertinent portion of the statute ties the collection of the dues to the collection of real property taxes, however, and this fact may influence when and whether dues are collected, particularly on newly constructed residences.
Your question concerns dues payable to the volunteer fire department of Benton County under the procedure set forth in A.C.A. §14-20-108(a)(1)(B)(i)(a). That statute, in subsection (a)(1)(A), allows a quorum court to pass an ordinance authorizing a county official tocollect volunteer fire department dues levied by the fire department. Subsection (a)(1)(B) goes further than subsection (a)(1)(A), however, and allows the calling of an election on the question of whether the county may levy the volunteer fire department dues on behalf of the department and, if approved by the electorate, include the dues on the real property tax statements and collect the dues at the same time and in the same manner as real property taxes. Specifically, Section14-20-108(a)(1)(B)(i)(a) reads:
 When any county quorum court receives a request for the levy of volunteer fire department dues, if the request has been signed by the fire chief and all other officers of a volunteer fire department and duly filed with the county clerk, the quorum court by ordinance shall call for an election on the issue of the levy of the volunteer fire department dues on each residence.
A.C.A. § 14-20-108(a)(B)(i)(a) (Supp. 2003) (emphasis added).
Subsection (a)(B)(i)(c) provides that:
 If the levy is approved by a majority of those voting on the issue, the dues shall be listed annually on real property tax statements and collected at the same time and in the same manner as real property taxes.
 You note that the interpretation of the word "residence" as used in subsection (a)(1)(B)(i)(a) has caused a problem for the Beaver Lake Volunteer Fire Department. Specifically, you note that "the county assessor will not assess fire dues on any property that is not currently being occupied, based on her interpretation of `residence.'" You state that the Beaver Lake Volunteer Fire Department believes that the definition of "residence" is "intended to mean a residential property but should not be expanded to include an occupancy requirement." The answer to your question therefore depends upon a construction of the term "residence" as used in the statute above.
The Arkansas Supreme Court has stated with regard to statutory interpretation, as follows:
 The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary meaning and usually accepted meaning in common language. Weiss v. McFadden, 353 Ark. 868, 120 S.W.3d 545 (2003). We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. Ozark Gas Pipeline Corp. v. Arkansas Pub. Serv. Comm'n, 342 Ark. 591, 29 S.W.3d 730 (2000). When the language of the statute is plain and unambiguous, there is no need to resort to rules of statutory construction. Weiss v. McFadden, supra. When the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. Id.
Macsteel, Parnell Consultants v. Ar. Ok. Gas Corp., ___ Ark. ___, ___ S.W.3d ___ (June 23, 2005); see also Ops. Att'y Gen. 2005-072 
2004-339.
The court has also held that "it does not engage in interpretations that defy common sense and produce absurd results," and that "in construing statutes . . . we look to the language under discussion in the context of the statute as a whole." Green v. Mills, 339 Ark. 200, 4 S.W.3d (1999),citing Haase v. Starnes, 323 Ark. 262, 915 S.W.2d 675 (1996); Steward v.McDonald, 330 Ark. 837, 958 S.W.2d 297 (1997); and Burcham v. City of VanBuren, 330 Ark. 451, 954 S.W.2d 266 (1997).
It has been stated that the definition of the term "residence" "is not easy" and that it "may have different meanings in different contexts."Davis v. Holt, 304 Ark. 619, 804 S.W.2d 362 (1991). An ordinary and common definition of the word is as follows:
 1. the place, esp. the house, in which a person lives or resides: dwelling place, home . . .
2. a structure serving as a dwelling place or home. . . .
Random House Webster's Unabridged Dictionary 1638 (2d Ed. 1998). This definition might be construed as requiring occupation before a "residence" is present. In some contexts the word "residence" is held to imply "domicile," which requires actual physical presence of a person and an intent to make the place a permanent home. See, e.g., Op. Att'y Gen.2004-125 citing Charisse v. Eldred, 252 Ark. 101, 477 S.W.2d 480 (1972). In my opinion, however, A.C.A. § 14-20-108(B)(i)(a) cannot be construed in this fashion in the context of this statute.
If "residence" were interpreted to require occupation or habitation, there would be no applicable procedure or guidance for the determination of whether residential structures, particularly existing residential structures, are "occupied" for the purposes of levying the A.C.A. §14-20-108(B)(i)(a) dues. For example, problems would arise in determining whether occupation on the date of the levy of the fee is sufficient, whether a majority of the year spent at the property is sufficient to meet any occupation requirement, or whether the fees levied would be prorated for individuals who are not in year-round residence. In my opinion, it would be an absurd reading to apply A.C.A. §14-20-108(B)(i)(a) to only occupied residential structures while not offering any guidance as to the procedure for who determines whether residency is met and what standards would apply. I cannot conclude that such a result is consistent with legislative intent when the statute is read as a whole.
In my opinion, the term "each residence" as used in A.C.A. §14-20-108(a)(1)(B)(i)(a) does not imply actual habitation or domicile, but rather simply refers to "each residence" in the district, meaning each residential structure. It has been held by numerous courts that the term "residence" sometimes simply refers to residential, as opposed to business or commercial, property or structures. See e.g., Marascio v.Campanella, 298 N.J. Super. 491, 689 A.2d 852 (1997); Devendorf v. AkbarPetroleum Co., 62 Ohio App.3d 842; 577 N.E. 2d 707 (1989); Sissel v.Smith, 242 Ga. 595, 250 S.E.2d 463 (1978); McDonald v. Painter,441 S.W.2d 179 (Tex. 1969); and Weber v. Graner, 132 Cal. App.2d 771,291 P.2d 173 (1956). In this regard, the issue is not unlike that discussed in Best Drywall, Inc. v. Berry, 108 Md. App. 381, 672 A.2d 116 (1996). InBest Drywall, at issue was a residential exception to a mechanics' lien statute. The applicable statute excepted "a single family dwelling being erected on the land of the owner for his own residence. . . ." A subcontractor who was owed money argued that this exception did not apply to a secondary vacation home because, not qualifying as a domicile, it could not be a "residence" under the statute. The court disagreed, noting that the word must be construed in context, considering the consequences resulting from one meaning or another, and that it would avoid a construction leading to an illogical or unreasonable result, or one contrary to common sense. Id. at 119. The court rejected the subcontractor's reliance on the meaning of the term "residence" from other statutory contexts where the term implied "domicile," stating that "`residence' does not always mean `domicile'" and that its meaning is "dependent on its contextual use," which may be established by evaluating the purposes of the statute. Id. The court held that in the context of the mechanics lien statute the word residence did not imply domicile.
The context of A.C.A. § 14-20-108 is clearly volunteer fire departments, and the aim of the statute is clearly to assist in dues collection efforts. The statute requires, after a favorable election result, that the dues be "listed annually on real property tax statements and collected at the same time and in the same manner as real property taxes." Taxes on existing residential structures are collected whether or not the property is occupied. Ordinarily, therefore, the occupation or non-occupation of a residential structure would be irrelevant to the collection of dues on the tax statements. The law requires that the dues be included on the tax statement, occupation notwithstanding.
One possible exception in this collection procedure, however, might involve the collection of dues on newly constructed residential structures. Under applicable assessment procedures, "[a]ll . . . new improvements over the actual value of one hundred dollars ($100), and all town or city lots as may have been platted, as the case may be, subsequent to January 1 of any year shall be subject to assessment and taxation for the year immediately following the . . . improvement or platting." A.C.A. § 26-26-1107(a) (Supp. 2003). Under this statute, newly constructed residential property is not assessed for taxes until the year following the year of its construction. This "January 1" requirement roughly coincides with the "lien date" (the first Monday in January), when assessed taxes become a lien upon and bind the property. See A.C.A. § 26-34-101 (Repl. 1997). For newly constructed residential property, therefore, tax statements, and thus volunteer fire department dues under A.C.A. § 14-20-108(a)(1)(B), will not be assessed or levied on such property until the year following construction. This result, however, has nothing to do with the construction of the term "residence" in the statute or whether property is "occupied" or "unoccupied" for purposes thereof. It is simply a consequence of the existing state tax collection procedures. If a volunteer fire department chooses to avail itself (through a vote of the electorate) of the more certain collection method involving the real property tax collection process, it must be prepared to accept the benefits as well as the drawbacks.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh