Opinion issued December 8, 2003 












In the 
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00324-CV
____________
 
    CITY OF PASADENA, WILLIAM R. RIDGWAY, 
VANESSA MORGAN, AND JOE DOW, Appellants

V.

GURGES GENNEDY, Appellee






On Appeal from the 270th District Court
 Harris County, Texas
Trial Court Cause No. 96-21226




* * *
 

 
 
NO. 01-02-00324-CV
____________
 
 GURGES GENNEDY, Appellant

V.

    CITY OF PASADENA, WILLIAM R. RIDGWAY, 
VANESSA MORGAN, AND JOE DOW, Appellees






On Appeal from the 270th District Court
 Harris County, Texas
Trial Court Cause No. 96-21226




O P I N I O N
          The City of Pasadena (“the City”) and William R. Ridgway, Vanessa Morgan,
and Joe Dow (collectively, “the enforcing parties”) sued Gurges Gennedy to enforce
the deed restrictions of the Pasadena River Oaks Subdivision. After a bench trial, the
trial court rendered judgment that the enforcing parties take nothing, declared that
Gennedy had not violated the subdivision’s deed restrictions, and denied attorney’s
fees to both sides. All parties appealed. We determine (1) whether the evidence was
legally sufficient to show that the deed restrictions had expired or, alternatively, that
they had been validly amended and, if so, (2) whether we should remand attorney’s
fees issues when we remand the cause with instructions. We reverse the judgment
and remand the cause with instructions.
                                         Facts and Procedural History
          In April 1996, the enforcing parties sued Gennedy to enforce the subdivision’s
deed restrictions (“the [original] deed restrictions”), alleging that his front-yard fence,
which was fewer than 40 feet from the street, violated Section II, Paragraph 19 of the
deed restrictions, which paragraph provided that “[n]o fence or wall of any character
shall be erected nearer to the front lot line than 40 feet therefrom . . . .” See Tex.
Loc. Gov’t Code Ann. § 212.133(a) (Vernon Supp. 2004) (allowing eligible
municipality to sue to enjoin or to restrain violations of deed restrictions). The
enforcing parties requested permanent injunctive relief, damages, and attorney’s fees. 
See id. § 212.153 (Vernon Supp. 2004) (allowing municipality to seek injunction or
abatement in suit to enforce restriction’s violation); id. § 212.156(b) (Vernon Supp.
2004) (allowing municipality, in enforcement suit based on ordinance, to recover civil
penalty for restriction’s violation); Tex. Prop. Code Ann. § 5.006(a) (Vernon 1984)
(providing for award of attorney’s fees in action based on breach of restrictive
covenant pertaining to real property).
          The trial court initially rendered summary judgment in favor of the enforcing
parties, granting a permanent injunction against Gennedy and awarding attorney’s
fees to the enforcing parties. Gennedy appealed. By unpublished opinion, this court
reversed the summary judgment because material fact issues existed and remanded
the cause. See Gennedy v. City of Pasadena, 1999 WL 771522 at *3-5 (Tex.
App.—Houston [1st Dist.] Aug. 6, 1998, pet. denied) (not designated for publication).
 
          Upon remand, Gennedy counterclaimed, seeking a declaration that his fence
did not violate the deed restrictions because the restrictions had either been modified
in writing or because the subdivision’s architectural control committee (“ACC”) had
allowed the variation. Gennedy also requested attorney’s fees. The enforcing parties
then supplemented their petition, contesting the validity of the modification and the
ACC’s approval and seeking declaratory relief. At trial, Gennedy argued
alternatively that the original deed restrictions had expired entirely by their own terms
in January 2000.
          After a bench trial, the trial court rendered judgment that the enforcing parties
take nothing, declared Gennedy’s fence to be “lawfully located and . . . not in
violation of” the subdivision’s deed restrictions, and denied attorney’s fees to both
sides. The trial court entered fact findings and legal conclusions concerning the
original deed restrictions’ expiration and amendment, but did not do so with respect
to attorney’s fees or the ACC’s approval. Both parties have appealed.
Legal Sufficiency
          In part of issues one and two in their appeal, the enforcing parties argue that
the evidence is legally insufficient to show that the deed restrictions expired by their
own terms in January 2000 or, alternatively, that the restrictions were validly
amended in 1997. In issue three, the enforcing parties argue that the trial court erred
in not ordering Gennedy to remove his fence because the amendment was invalid, the
deed restrictions had not expired, and Gennedy had stipulated that his fence did not
comply with the original deed restrictions’ 40-foot set-back provision. We construe
the enforcing parties’ challenges to be to the pertinent fact findings and legal
conclusions supporting these aspects of the judgment.
 
A.      Standard of Review
          We review legal conclusions de novo. See In re Humphreys, 880 S.W.2d 402,
404 (Tex. 1994) (“[Q]uestions of law are always subject to de novo review.”).
          When, as here, we have a complete reporter’s record on appeal, we review the
trial court’s fact findings under the same standards for legal sufficiency as govern the
review of jury findings. Min v. Avila, 991 S.W.2d 495, 500 (Tex. App—Houston [1st
Dist.] 1999, no pet.). Thus, when the complaining party challenges the legal
sufficiency of the evidence underlying an adverse finding on which the party did not
have the burden of proof, the party must demonstrate on appeal that there is no
evidence to support the finding. Love v. State Bar of Tex., 982 S.W.2d 939, 943-44
(Tex. App.—Houston [1st Dist.] 1998, no pet.). In such a review, we consider all
evidence in the light most favorable to the prevailing party, indulging every
reasonable inference in that party’s favor, and disregard all evidence and inferences
to the contrary. See Assoc. Indem. Corp. v CAT Contracting, Inc., 964 S.W.2d 276,
285-86 (Tex. 1998). If more than a scintilla of evidence supports the finding, the no-evidence challenge fails. See Formosa Plastics Corp. USA. v. Presidio Eng’rs &
Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998). When the complaining party
challenges the legal sufficiency of the evidence underlying an adverse finding on
which it had the burden of proof, the party must demonstrate on appeal that the
evidence conclusively established all vital facts in support of the issue. See Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001). We employ a two-part test
in reviewing such a challenge. Pac. Employers Ins. Co. v. Dayton, 958 S.W.2d 452,
455 (Tex. App.—Fort Worth 1997, pet. denied). We first look for evidence
supporting the finding, ignoring all evidence to the contrary. Francis, 46 S.W.3d at
241. If there is no evidence supporting the finding, we then examine the entire record
to see if the contrary proposition is established as a matter of law. Id. 
          “The judgment may not be supported upon appeal by a presumed finding upon
any ground of recovery or defense, no element of which has been included in the
findings of fact; but when one or more elements thereof have been found by the trial
court, omitted unrequested elements, when supported by evidence, will be supplied
by presumption in support of the judgment.” Tex. R. Civ. P. 299.
B.      Rules Governing the Construction of Restrictive Covenants
          The subdivision’s deed restrictions were restrictive covenants concerning real
property. See Tex. Prop. Code Ann. § 202.001(4) (Vernon 1995) (defining
restrictive covenant). Restrictive covenants are subject to the general rules of
contract construction. Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998); Bank
United v. Greenway Improvement Ass’n, 6 S.W.3d 705, 707 (Tex. App.—Houston
[1st Dist.] 1999, pet. denied). As when interpreting any contract, the court’s primary
duty in construing a restrictive covenant is to ascertain the drafter’s intent from the
instrument’s language. Bank United, 6 S.W.3d at 708. In ascertaining the drafter’s
intent, we must examine the covenant as a whole in light of the circumstances present
when the covenant was made. Pilarcik, 966 S.W.2d at 478. We must give a
restrictive covenant’s words and phrases their commonly accepted meaning. Truong
v. City of Houston, 99 S.W.3d 204, 214 (Tex. App.—Houston [1st Dist.] 2002, no
pet.). We review a trial court’s interpretation of a restrictive covenant de novo. Air
Park-Dallas Zoning Comm. v. Crow-Billingsley Airpark, Ltd., 109 S.W.3d 900, 909
(Tex. App.—Dallas 2003, no pet.).
          Whether restrictive covenants are ambiguous is a matter of law for the court to
decide. Pilarcik, 966 S.W.2d at 478; Samms v. Autumn Run Cmty. Improvement
Ass’n, Inc., 23 S.W.3d 398, 402 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). 
A covenant is unambiguous if, after appropriate rules of construction have been
applied, the covenant can be given a definite or certain legal meaning. Pilarcik, 966
S.W.2d at 478; Pitman v. Lightfoot, 937 S.W.2d 496, 517 (Tex. App.—San Antonio
1996, writ denied) (holding same concerning contracts generally). In contrast, if,
after appropriate rules of construction have been applied, a covenant is susceptible
of more than one reasonable interpretation, the covenant is ambiguous. Pilarcik, 966
S.W.2d at 478; Universal C. I. T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex.
1951). Mere disagreement over a restrictive covenant’s interpretation does not
necessarily render the covenant ambiguous. Air Park-Dallas Zoning Cmte., 109
S.W.3d at 909. 
          At common law, covenants restricting the free use of land are not favored, but
will still be enforced when they are confined to a lawful purpose and are clearly
worded. E.g., Wilmoth v. Wilcox, 734 S.W.2d 656, 657 (Tex. 1987). Accordingly,
under the common law, a restrictive covenant’s words cannot be enlarged, extended,
stretched, or changed by construction. Id. All doubts concerning a restrictive
covenant’s terms are resolved in favor of the free and unrestricted use of the land, and
any ambiguity must be strictly construed against the party seeking to enforce the
covenant. Id.
          In 1987, the Legislature amended the Texas Property Code to provide that all
restrictive covenants contained in instruments governing certain residential
developments, regardless of the date on which the covenants were created, must be
liberally construed to give effect to their purposes and intent. See Tex. Prop. Code
Ann. §§ 202.002(a), 202.003(a) (Vernon 1995) (added by Act of June 1, 1987, 70th
Leg., R.S., ch. 712, § 1, 1987 Tex. Gen. Laws 2585, 2585). Some courts of appeals
have recognized that the common-law requirement of construing restrictions strictly
and section 202.003(a)’s requirement of construing residential covenants liberally to
effectuate their purposes and intent might appear contradictory.


 See Dyegard Land
P’ship v. Hoover, 39 S.W.3d 300, 309 (Tex. App.—Fort Worth 2001, no pet.); see
also Herbert v. Polly Ranch Homeowners Ass’n, 943 S.W.2d 906, 908 n.2 (Tex.
App.—Houston [1st Dist.] 1996, no writ) (“Even after the enactment of § 202.003,
this Court stated that covenants restricting the free use of land were not favored. It
is not necessary for us to resolve such discrepancies today because under either
approach we would reach the same result in this case.”) (emphasis added; citations
omitted). Apparently on this basis, some courts of appeals have held or implied that
section 202.003(a)’s liberal-construction rule concerning residential covenants
supersedes the common-law strict-construction rule entirely.


 In contrast, other courts
of appeals, including ours, have concluded that there is no discernable conflict
between the common law and section 202.003(a).


 
          Even courts in this latter (no-discernable-conflict) category differ in what
conclusion they draw from their determination that no conflict exists between the
construction rules of the common law and those of section 202.003(a). For example,
some of these courts, including ours, have simply continued to apply the common-law
strict-construction rules without a precise explanation of how the statutory and
common-law construction rules interact without inconsistency.


 In contrast, other
courts of appeals have held that the common-law strict-construction rule applies only
when there is an ambiguity concerning the drafter’s intent; however, to determine if
an ambiguity concerning the drafter’s intent exists, these courts first apply section
202.003(a)’s liberal-construction mandate.


 Of course, these two views of how
section 202.003(a)’s and the common law’s construction rules interact can
theoretically lead to different constructions of the same term, even if the term is
ultimately found to be unambiguous. See Pitman, 937 S.W.2d at 517 (holding that
contract is unambiguous as matter of law if, after appropriate rules of construction
have been applied, contract can be given definite or certain legal meaning).
          Finally, we note that some courts of appeals since 1987 have simply continued
applying the common-law strict-construction rule without referring to section
202.003(a) at all;


 others (including ours) have applied or referred to section
202.003(a)’s liberal-construction standard without referring to the common-law
construction principles at all;


 and still another has referred to both standards together
without discussing whether the standards do or do not conflict.



          The Supreme Court has noted, but not yet resolved, the potential conflict
between the common-law and section-202.003(a) construction rules. See Pilarcik,
966 S.W.2d at 478; see also Herbert, 943 S.W.2d at 908 n.2 (noting that Supreme
Court’s opinion in Wilmoth—which relied on common-law restrictive-covenant-construction rules and not on section 202.003(a)—issued soon after section
202.003(a)’s effective date, but that issue of whether section 202.003(a) changed the
common-law construction rules was not raised or briefed in Wilmoth). We
respectfully urge the Supreme Court to resolve the differences among the courts of
appeals on this issue. However, because we conclude that, under either a liberal or
a strict construction of the original deed restrictions in this case, we would reach the
same conclusion, we will continue to follow our holdings in Ashcreek and
Crispin—that no discernable conflict exists between the common law and section
202.003(a)—without reconsidering the issue. See Ashcreek Homeowner’s Ass’n, Inc.
v. Smith, 902 S.W.2d 586, 588-89 (Tex. App.—Houston [1st Dist.] 1995, no writ);
Crispin v. Paragon Homes, Inc., 888 S.W.2d 78, 81, 81 n.1 (Tex. App.—Houston [1st
Dist.] 1994, writ denied).
C.      Expiration of the Deed Restrictions
          In part of issue one in their appeal, the enforcing parties argue that the evidence
is legally insufficient to show that the original deed restrictions expired by their own
terms in January 2000.
          Because they sought to enforce the original deed restrictions, the enforcing
parties had the burden of proof, regardless of whether they were cast as plaintiffs or
defendants, to show that the original restrictions were valid and enforceable,
including showing that the restrictions had not expired by their own terms in January
2000. See Dyegard Land P’ship, 39 S.W.3d at 308; McCart v. Cain, 416 S.W.2d 463,
465-66 (Tex. Civ. App.—Fort Worth 1967, writ ref’d n.r.e.). Therefore, to prevail in
their legal-sufficiency challenge, the enforcing parties must show that they
conclusively established all vital facts in support of their claims. See Francis, 46
S.W.3d at 241. The only disputed, vital fact affecting the original deed restrictions’
enforceability was whether the restrictions expired in January 2000.



          The trial court’s pertinent fact finding is as follows:
 
4.The Restrictions applying to Pasadena River Oaks Subdivision,
Harris County, Texas, expired and terminated by its [sic] own
terms in January 2000. As of the date of the trial of this lawsuit,
the Restrictions applying to Pasadena River Oaks Subdivision
have not been extended or renewed. . . .
          The trial court’s pertinent legal conclusions are as follows:
1.The [deed] Restrictions applying to Pasadena River Oaks
Subdivision . . . terminated and expired by its [sic] own terms in
January 2000 and they are of no further force or effect, the same
having never been renewed or extended.
 
. . .
 
4.As of the date of the trial of this lawsuit, there are no [deed]
Restrictions in place lawfully applying to Pasadena River Oaks
Subdivision, Harris County, Texas because the only Restrictions
that ever applied to Pasadena River Oaks Subdivision expired and
terminated by its [sic] own terms in January 2000.



          The trial court’s findings and conclusions are based on the language of Section
I of the deed restrictions:
TERMS OF RESTRICTIONS: These restrictions shall be
covenants running with the land and shall be binding on all parties and
persons owning any of the lots in said PASADENA RIVER OAKS,
affected by these restrictions from the present time until January, 2000. 
The then owners of a majority of the lots affected by these restrictions
. . . may, by a written instrument executed and filed for record not more
than six (6) months prior to January, 2000, or any five (5) year period
after January, 2000, change these restrictions, covenants, and conditions
in whole or in part as to all of said property, or as to any part thereof. 
The execution of said written instrument shall include acknowledgments
thereof in the manner entitling the same to be placed of record, but said
instruments need not all be under one covenant but may be of several
different instruments.

(Emphasis added.) 
          Although it is somewhat awkward, this language, regardless of whether we
construe it liberally or restrictively, is nonetheless unambiguous that the restrictions
were intended to continue beyond January 2000, subject to amendment in the
prescribed manner. Gennedy focuses on the statement that the restrictions “shall be
binding . . . until January, 2000,” but that statement cannot be read in a vacuum. The
immediately following sentence qualifies the language upon which Gennedy relies:
the later sentence allows amendment of the restrictions “not more than six (6) months
prior to” either “January, 2000” or “any five (5) year period after January, 2000.” 
(Emphasis added.) The second sentence’s providing for amendments every five years
after January 2000 is rendered meaningless if the preceding sentence is construed to
mean that the restrictions unilaterally expire in January 2000. On the other hand,
reading the language “shall be binding . . . until January, 2000” not as an expiration
date, but as the date on which the restrictions may first be amended, harmonizes both
sentences. “Wherever possible, a covenant should be construed to give effect to all
of the provisions and to avoid rendering any provision meaningless.” Crispin, 888
S.W.2d at 82.
          Our interpretation is supported by other provisions in the deed restrictions. For
example, the preamble states that the developer adopted the restrictions “for the
purpose of creating and implementing a uniform plan for the development,
improvement and sale” of the subdivision’s property “as a restricted, exclusive
residential district . . . .” (Emphasis added.) The restrictions were adopted and
recorded in 1980. It is hardly conceivable that, given the express purpose of
establishing a restricted and exclusive community, the developer then intended for
the restrictions supporting that purpose to expire entirely in just under 20 years. 
Additionally, the deed restrictions contain 33 paragraphs of specific and sometimes
detailed restrictions, plus provide for the ACC’s mandatory approval of various
building plans, including plans for remodeling of and alteration to a building, not just
a building’s initial construction.
          Gennedy first responds that, if the original deed restrictions did not expire by
their own terms, they would perpetually burden the land in violation of Texas
Constitution article I, section 26. See Tex. Const. art. I, § 26. This argument was
never presented to the trial court in any manner, however, and is thus not a basis for
the judgment in the fact findings and legal conclusions. See Tex. R. Civ. P. 299
(“The judgment may not be supported upon appeal by a presumed finding upon any
ground of recovery or defense, no element of which has been included in the findings
of fact . . . .”). Gennedy also replies that it would be inequitable to require the
removal of the fence because the ACC approved his plan in advance, because there
was testimony that more than half of the subdivision’s property owners whom the
ACC committee had contacted before it ruled had “approved” Gennedy’s requested
variation, and because appellant Ridgway was concerned about the fence only
because it violated the restrictions, not because it affected him personally. Again, this
equity ground (and also any argument having to do with the ACC’s approval) is not
a basis stated in the fact findings and legal conclusions. See Tex. R. Civ. P. 299.
          We hold that the original deed restrictions were clearly not intended to expire
in January 2000. Accordingly, we further hold that the enforcing parties conclusively
established, through the restrictions’ plain language, that the original deed restrictions
were valid and enforceable. We thus sustain the enforcing parties’ challenge to fact
finding four and legal conclusions one and four. Because of these holdings, we need
not reach the enforcing parties’ factual-sufficiency challenge under issue one.
          We sustain the enforcing parties’ issue one.
D.      Amendment of the Deed Restrictions
          In part of issue two in their appeal, the enforcing parties argue that the evidence
is legally insufficient to show that the deed restrictions were validly amended in 1997.
          Amendment or modification of a restrictive covenant is an affirmative defense. 
See Dyegard Land P’ship, 39 S.W.3d at 308; see also Brownlee v. Brownlee, 665
S.W.2d 111, 112 (Tex. 1984) (holding that contractual modification is affirmative
defense). Gennedy thus had the burden of proof to show the validity and
enforceability of the amended restriction. See Dyegard Land P’ship, 39 S.W.3d at
308. Accordingly, to prevail in their legal-sufficiency challenge, the enforcing parties
must show that there is no evidence to support the relevant finding. See Love, 982
S.W.2d at 943-44.
          The trial court’s pertinent fact finding is as follows:
3.Until January 2000, [deed] Restrictions applying to Pasadena
River Oaks Subdivision governed in part the placement and
construction of improvements upon lots located within Pasadena 
River Oaks Subdivision. . . . The [deed] Restrictions were
modified and amended by document filed March 25, 1997 . . . .
          The trial court’s pertinent legal conclusions are as follows:
2.The [deed] Restrictions applying to Pasadena River Oaks
Subdivision were modified and amended lawfully by that certain
Modification and Amendment to Restrictions dated March 18,
1997 . . . .
 
3.The Modification and Amendment to Restrictions lawfully
allowed GURGES GENNEDY to maintain the improvements
construed [sic] upon his lot in Pasadena River Oaks Subdivision 
as the same were located at the time of this lawsuit. . . .

          A developer generally has the unilateral right to impose on its subdivision, in
the first instance, any restrictions that it chooses, to alter or to cancel restrictions, or
to abrogate restrictions entirely, so long as no subdivision lots have been sold. 
Dyegard Land P’ship, 39 S.W.3d at 313. After any of the subdivision’s lots has been
sold, the developer’s power to amend the deed restrictions may nonetheless continue
if the dedicating instrument grants the developer the right to amend the restrictions
and establishes a method of doing so. See id. If a developer exercises the power to
amend that the dedicating instrument grants the developer, however, any amendment
that the developer makes must be in the exact manner that the dedication provides. 
Id.; see Norwood v. Davis, 345 S.W.2d 944, 948 (Tex. Civ. App.—Austin 1961, no
writ). Furthermore, any amendment to a restrictive covenant must not be illegal or
against public policy. Dyegard Land P’ship, 39 S.W.3d at 313; Miller v. Sandvick,
921 S.W.2d 517, 521 (Tex. App.—Amarillo 1996, writ denied).
          In accordance with this public-policy limitation, a developer’s contractual,
unilateral right to amend, to alter, or to annul the restrictive covenants that it
created—although generally recognized as a valid right under Texas law—continues
only as long as the developer retains ownership in property within the subdivision. 
See Dyegard Land P’ship, 39 S.W.3d at 314-15; Norwood, 345 S.W.2d at 950-51
(Hughes, J., concurring) (expressing view that right to amend expired when developer
divested itself of all ownership in property and citing general rule that covenant
attached to estate cannot endure beyond estate’s termination). The rationale behind
limiting a developer’s unilateral right in this way is that, “so long as the developer has
an interest in the subdivision, his own economic interest will tend to cause him to
exercise his right in a manner which will take into account harm to other lots in the
subdivision. Thus, there is ‘some economic restraint’ against arbitrary action that is
lacking once he has divested himself of all interest.” Dyegard Land P’ship, 39
S.W.3d at 315.
          The developer, Columbian Village Corporation (“Columbian”), executed and
filed the original deed restrictions in 1980. The only applicable deed-restriction
provision concerning amendment is the following:





 
VI.
MODIFICATIONS—AMENDMENTS
 
The undersigned shall have and hereby reserves the right to
modify and amend these restrictions, conditions and covenants with
reference to location or setback of any of the improvements within the
subdivision and the direction which the same shall face to such extent
as it deems for the best interests of the subdivision as a whole. Such
modifications and amendments, if any, shall be in writing.
 
 /s/ 
Hugo A. Ramirez, M.D.–President
COLUMBIAN VILLAGE CORPORATION




(Emphasis added.)
          The subdivision contained 20 lots. It was undisputed that, at all times relevant
to this suit, at least some of these lots had been sold. In 1989, Columbian dissolved. 
The record does not show the reason for the dissolution. In conjunction with its
dissolution, Columbian assigned its modification rights by corporate resolution to Dr.
Ramirez personally.


 It is undisputed that the deed restrictions did not expressly
state whether Columbian could assign its amendment rights under Section VI.
          In March 1997, after the lawsuit’s filing, and pursuant to Section VI of the deed
restrictions, Dr. Ramirez executed an instrument entitled “Modification and
Amendment of Deed Restrictions.” The 1997 amendment purported to change
Section II, Paragraph 19 of the original deed restrictions by adding the italicized
language to it:
19.No wall or fence of any character shall be erected nearer to the
front lot line than 40 feet therefrom, except that a fence or wall may be
erected on [Gennedy’s lot] within 25 feet of the front (west) line of said
lot; and no fence or wall shall exceed 8 feet in height. Barbed wire and
mesh or net fencing are prohibited, unless such be galvanized chain link.

(Emphasis added.) The amendment was filed of record the same month.
          For purposes of our discussion, we assume without deciding that Columbian
could validly assign its amendment rights under Section VI and that Dr. Ramirez
could validly amend the restrictions with respect to only one lot in the subdivision. 
Nonetheless, as the enforcing parties argue, a developer (or its assignee, under our
assumption) may exercise the reserved, unilateral right to amend or to revoke
restrictive covenants only as long as the developer (or its assignee) retains some
ownership in property within the subdivision. Dyegard Land P’ship, 39 S.W.3d at
314-15. Therefore, it was Gennedy’s burden to show that Columbian or Dr. Ramirez
retained some ownership interest in the subdivision’s property when the 1997
amendment was executed. Gennedy produced no evidence showing this, despite the
enforcing parties’ having raised the issue below and the trial court’s having
acknowledged their position and having reserved ruling on it. Additionally, although
it was not their burden to do so, the enforcing parties presented undisputed evidence
that (1) Columbian dissolved in 1989 and no longer existed when the 1997
amendment was executed; (2) Columbian distributed among its shareholders all
remaining property and assets as of the date of dissolution, so that Columbian
thereafter owned no subdivision property; and (3) Dr. Ramirez had not personally
owned any property in the subdivision since 1989. Therefore, not only did Gennedy
fail to produce any evidence that someone with the potential power to amend the
restrictions had an ownership interest in the subdivisions’s land at the time of the
amendment, but the enforcing parties conclusively proved that no one with the
potential power to modify the restrictions had any such ownership interest. 
Accordingly, Gennedy produced no evidence of an essential element of his
affirmative defense of amendment. See Dyegard Land P’ship, 39 S.W.3d at 308,
314-15 (holding that summary judgment party asserting affirmative defense of
restrictive covenant’s amendment has burden to raise fact issue on each element of
affirmative defense; also holding that developer can unilaterally amend restrictive
covenant only as long as developer holds some interest in subdivision’s land).
          We sustain the enforcing parties’ challenge to fact finding three, their challenge
to legal conclusions two and three, and their issue two. We thus need not reach their
remaining arguments under their issue two.
          Because we have sustained the enforcing parties’ issues one and two, we
sustain their issue three, in which they argue that the trial court erred in not ordering
Gennedy to move his fence to the set-back line in the original deed restrictions
because his fence undisputedly did not comply with that provision.
Attorney’s Fees
          In issue four in their appeal, the enforcing parties argue that the trial court erred
in denying their request for attorney’s fees because the Property Code requires such
an award.


 In the sole issue in his appeal, Gennedy argues that the trial court erred
in denying him reasonable attorney’s fees under the Property Code or under the
Declaratory Judgments Act (“DJA”).


 In response to these attorney’s fees
challenges, neither party argues that the other party’s evidence of reasonableness or
necessity of fees was insufficient; rather, each party argues that the other was not
entitled to fees as a matter of law under the applicable statutes.
          The Property Code requires a trial court to award reasonable attorney’s fees to
a prevailing party “who asserted the action” in a suit based on the breach of a
restrictive covenant pertaining to real property. Tex. Prop. Code Ann. § 5.006. One
defending such a suit is not entitled to attorney’s fees under section 5.006. See id. §
5.006(a); Pebble Beach Prop. Owners’ Ass’n v. Sherer, 2 S.W.3d 283, 291-92 (Tex.
App.—San Antonio 1999, pet. denied). The DJA allows the trial court to award
reasonable and necessary attorney’s fees as are equitable and just. See Tex. Civ.
Prac. & Rem. Code Ann. § 37.009 (Vernon 1997). The DJA “entrusts attorney fee
awards to the trial court’s sound discretion, subject to the requirements that any fees
awarded be reasonable and necessary, which are matters of fact, and to the additional
requirements that fees be equitable and just, which are matters of law.” Bocquet v.
Herring, 972 S.W.2d 19, 21 (Tex. 1998). “Unreasonable fees cannot be awarded
[under the DJA], even if the court believed them just, but the court may conclude that
it is not equitable or just to award even reasonable and necessary fees.” Id. A party
need not prevail to be awarded attorney’s fees under the DJA. Hunt v. Baldwin, 68
S.W.3d 117, 135 (Tex. App.—Houston [14th Dist.] 2001, no pet.).
          The enforcing parties argue on appeal that they were entitled to attorney’s fees
under section 5.006. However, that provision requires the trial court to award fees
to the prevailing party. See Tex. Prop. Code Ann. § 5.006(a). Here, Gennedy was
the prevailing party below, but he was the defendant in the enforcing parties’ suit to
enforce the deed restrictions, not the one “who asserted the action,” and he asserted
only DJA counterclaims. See id.; Sherer, 2 S.W.3d at 291-92. Moreover, he did not
plead for or request that fees be awarded him under the Property Code, but only under
the DJA. See Tex. R. App. P. 33.1(a)(1).
          We have already determined that we must reverse the trial court’s judgment to
the extent that the judgment concerned the validity of the deed restrictions, their
attempted amendment, and their violation, and we are remanding the cause with
instructions in this regard. Because the award of attorney’s fees depends on matters
(e.g., who prevails, what is equitable and just) to which the disposition on remand
may be relevant, we decline to reach any party’s arguments concerning attorney’s
fees, but will instead allow the trial court to reconsider the award of attorney’s fees
upon remand. Accordingly, we do not reach the enforcing parties’ issue four in their
appeal or Gennedy’s sole issue in his appeal.



Conclusion
          We reverse the judgment of the trial court and remand the cause with
instructions for the trial court (1) to render appropriate declaratory judgment,
consistent with this opinion, that the original deed restrictions have not expired by
their own terms and continue in effect, that the March 1997 amendment of the
original deed restrictions was invalid, and that Gennedy’s fence thus violates the set-back provisions of the original deed restrictions; (2) to grant any relief, injunctive or
otherwise, that was already pleaded by the parties at the time of the January 10, 2001
judgment and that is appropriate to the declarations ordered in (1), above; and (3) to
consider the parties’ claims for attorney’s fees on any basis that the law allows or
requires and that the parties had already pleaded at the time of the January 10, 2001
judgment.
 
 
 
                                                             Tim Taft
                                                             Justice
Panel consists of Justices Taft, Jennings, and Hanks.